Jeannette WYMER; Jean Eddy; Tina Pontaski, formerly known as Tina Vail; Susan White; and Demetri Chorny, as Executor of the Estate of Rita Chorny, deceased, Plaintiffs,

v.

NEW YORK STATE DIVISION FOR YOUTH; George Dolecal, individually and as Director, New York State Division for Youth–Oliverio Youth Camp; Cheri Reed, individually and as Chief Education Officer; Eamonn D'Arcy, individually and as Senior Youth Division Coordinator; James Gifford, individually and as Personnel Director; Clay Osborn, individually and as Regional Director; Lou Benton, individually and as District Supervisor; Robert Kennedy, individually and as Employee Relations Officer; Frank Hall, individually and as Director, Defendants.

No. Civ–82–583C.

United States District Court, W.D. New York.

Sept. 28, 1987.

William A. Price, Buffalo, N.Y., for plaintiffs.

James A. Mullenhoff, Buffalo, N.Y., for defendant Dolecal.

Robert Abrams, Atty. Gen., of the State of N.Y. (Paul F. McCarthy, Asst. Atty. Gen., of counsel), Buffalo, N.Y., for remaining defendants.

CURTIN, Chief Judge.

On or about April 3, 1987, defendant George Dolecal, Director of the New York Division for Youth's Oliverio Youth Camp [Dolecal], moved for summary judgment or partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (Items 48 and 49). The remaining defendants have moved for partial summary judgment on their own behalf (Item 50). Plaintiffs oppose these motions (Items 53–56).

This is an action brought by or on behalf of five female plaintiffs formerly employed by defendant New York State Division for Youth [DFY] at this defendant's Oliverio Youth Camp in the Town of Great Valley, New York, County of Cattaraugus. This camp was, at all times pertinent to this case, operated for the education and rehabilitation of wayward youth of the State of New York. In their complaint, plaintiffs allege sex discrimination violative of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, *et seq.;* 42 U.S.C. §§ 1983, 1985, and 1988; as well as New York State law.

In the lengthy "fact affidavit" submitted by plaintiffs' attorney, William A. Price, Esq., he alleges myriad instances of job-related sexual misconduct and harassment by defendant Dolecal between May and December of 1979, which culminated in plaintiff Wymer's telephone call to Division for Youth Deputy Director Thomas Mullen on December 17, 1979, and defendant Osborn's meeting with the five plaintiffs three days later (Item 53, pp. 18–29). Thereafter, plaintiffs allege that defendants Dolecal, D'Arcy, and Reed subjected plaintiffs to a "campaign of intimidation and harassment," whose particulars, in fact, surpassed their original complaint (*id.,* pp. 29–47). During the time between plaintiff Wymer's original telephone call and February of 1981, plaintiffs allege that plaintiff Vail was fired after making allegations of harassment to defendant Osborn; plaintiff Chorny fled the work place in a hysterical state and was eventually terminated; plaintiff Wymer was given a leave of absence because of her fear of returning to work; plaintiff Eddy was subjected to unwarranted "Supervisory Conferences" and other harassment tactics prior to her resignation; and plaintiff White was subjected to four "Supervisory Conferences," three "counseling" memoranda, and two prior evaluations before taking a pregnancy leave, never to return.

In addition to all of the above, plaintiffs contend that defendants Benton, Osborn, Kennedy, Gifford, and Hall intentionally failed to properly investigate and remedy the original misconduct, and also failed to protect plaintiffs from intimidation and retaliation by defendants Dolecal, D'Arcy, and Reed. Plaintiffs say that the facts of

this case show that defendants Benton, Osborn, Kennedy, Gifford, and Hall are all sophisticated in the area of government administration and had timely knowledge of every act complained of now and more than ample opportunity to communicate with plaintiffs and each other about them. Plaintiffs assert that these defendants' failure to act to remedy the misconduct and otherwise protect plaintiffs evidences more than mere negligence. Instead, they say the evidence, summarized in part at Item 53, pp. 52–58, indicates that:

> [the defendants' written report] is not good faith negligence. It is a confession of intent. It was drafted, reviewed and endorsed by the leading officials of the agency, assisted throughout by attorneys and equal employment experts. Every omission, every contrived rule of proof, every failure of common sense favors the DFY goal of keeping Mr. DOLECAL at the Camp. To achieve this goal, they failed to remedy pervasive sexual harassment and abuse endured by nearly every female who worked at the facility.

Item 53, p. 58.

Moreover, plaintiffs say that defendants Benton, Osborn, Kennedy, Gifford, and Hall did not protect their employee-witnesses by failing to enforce their own rules, as well as state and federal law, despite overwhelming proof of the other defendants' illegalities. Item 53, pp. 59–63.

In defendant Dolecal's motion papers (Item 48), he sets forth a set of facts which dispute plaintiffs' allegations. He argues, and plaintiffs do not dispute, that for some time prior to the time of defendant Dolecal's appointment to the directorship of the Oliverio Youth Camp in March of 1978, the Division for Youth was experiencing severe difficulties in the camp. He says:

> Defendant DOLECAL was known to his superiors in the Division for Youth, most of whom are now defendants in this Action, as a strong and capable supervisor possessed of a strong and vigorous personality. He also had a reputation for substantial organizational skill and was known as a firm executive who required, both of himself and his subor-

dinates, a high degree of dedication to the task at hand and to the mission of the Division for Youth. It appears that the Division for Youth, at that time, felt that defendant DOLECAL was equal to the task of revamping the programs and staff at the Great Valley facility and of making it a viable unit of the Division and, rather than close the facility immediately, the decision was made to install DOLECAL as Director *specifically* to rebuild the program virtually from scratch *and to bring the staff and personnel under effective control and supervision.*

*Id.,* ¶ 36 (emphasis in original).

Defendant Dolecal says that, after assuming the Oliverio Youth Camp directorship, he undertook certain reforms which he deemed essential to the continued survival of the facility (*id.,* ¶ 39(a)–(h)), but that the rank and file staff could not or would not accept the new conditions. This, he alleges, resulted in great unrest at the camp (*id.,* ¶ 41). Defendant Dolecal says that:

> the gravamen of most staff complaints about him involved his insistence on imposing his command authority on the facility and its residents and staff to the end that the statutory mandates of the Division for Youth would be carried out, admittedly in a "reform" atmosphere

(*Id.,* ¶ 42). Against this factual background, all defendants now move for partial summary judgment to dismiss Counts Three, Four, and Five of plaintiffs' Amended Complaint. Plaintiffs oppose.

*Count III*

According to defendants (Items 48–50), the evidence produced in this case fails as a matter of law to establish a violation of constitutional magnitude in violation of 42 U.S.C. § 1983. Put another way, defendants say that it cannot be shown that they individually committed acts which violated the constitutional rights of the individual plaintiffs. Moreover, defendants assert that because Title VII is "the quintessential comprehensive remedial scheme," plaintiffs desiring to enforce their Title VII rights may not do so through an action

pursuant to section 1983. Item 50, p. 10. Defendants say that plaintiffs simply cannot prove that each individual defendant violated each of the individual plaintiffs' constitutional rights. Finally, all defendants except defendant Dolecal argue that their good faith shields them from damages here under section 1983.

■ Plaintiffs disagree. They argue that their section 1983 claims are properly founded upon various constitutional amendments and their respective rights as Civil Service employees. They state:

> the conditions of each plaintiff's employment were governed by rights conferred and protected by New York State laws and each plaintiff was entitled to continued government employment by virtue of those laws. Plaintiffs may not be arbitrarily deprived of their property interest in their state employment and they had a right to equal protection in relation to other similarly situated employees.

Item 54, p. 5. Plaintiffs say that, in this case, each plaintiff was "constructively discharged for illegal reasons." *Id. Cf., Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438 (2d Cir.1980).

■ Moreover, plaintiffs say that their section 1983 claims are not precluded by plaintiffs' additional assertion of a Title VII claim. *Cf., Great American Federal Savings and Loan Association v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). Citing *Johnson v. Railway Express Agency*, 421 U.S. 454, 459, 95 S.Ct. 1716, 1719, 44 L.Ed.2d 295 (1979); and *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), plaintiffs say that Title VII was designed to supplement rather than supplant existing laws and institutions relating to employment discrimination. *See also* Item 54, pp. 8–13. They argue that because they allege violation of constitutional rights, their section 1983 claims should be allowed to stand. *Skadegaard v. Farrell*, 578 F.Supp. 1209, 1218 (D.N.J.1984).

■ In addition, plaintiffs dispute the arguments of some of the defendants that they are insulated from liability under section 1983 because of qualified immunity. Contrary to defendants' view, plaintiffs say that when defendants knowingly allowed an offensive and hostile work environment to exist and failed to protect plaintiffs from harassment and retaliation, they violated plaintiffs' constitutional rights. Item 54, pp. 15–17.

I find plaintiffs' arguments persuasive at this time and, therefore, deny defendants' motion for summary judgment on this ground. If, at trial, defendants believe that plaintiffs have failed to present sufficient proof to allow one or more of the individual plaintiffs' section 1983 claims against them to go to the jury, defendants may renew their respective motions.

*Count IV*

■ Defendants also argue that plaintiffs' claims pursuant to 42 U.S.C. § 1985(3) have been preempted by Counts One and Two of their Amended Complaint, which allege violations of Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e, *et seq. Great American Federal Savings and Loan Association v. Novotny, supra.* In addition, defendants say that, as a matter of law, section 1985(3) is inapplicable to allegations of sex discrimination in the job setting. Finally, defendants say that even if section 1985(3) did apply here, plaintiffs cannot establish the requisite elements in order to prevail at trial. Therefore, they contend that they are entitled to summary judgment on Count Four of plaintiffs' Amended Complaint.

I find defendants' arguments unpersuasive at this time. As above, I find that defendants misconstrue the Supreme Court's decision in the *Novotny* case and that, in the context of public employment, section 1985(3) is not preempted by other possible statutory remedies. Item 54, pp. 8–13. In addition, I believe that section 1985(3) does apply to charges of sex-based discrimination in the job setting, contrary to defendants' assertions. Finally, I believe that plaintiffs have raised significant issues of material fact to deny defendants'

motion for summary judgment on this ground for the time being.

*Count V*

 Finally, defendants say that plaintiffs' state claims are not cognizable under the common law of the State of New York and therefore must be dismissed now. The claims at issue are tortious inference with contract rights and intentional infliction of emotional distress. With respect to the first of these alleged rights, defendants say that "[n]owhere in the pleadings or the depositions taken to date is there any indication that any of [sic] all of the plaintiffs had a contractual right of employment which could be interfered with, a *sine qua non* of such asserted claim for relief." Item 47, p. 33. Defendants argue that the Civil Service Law of the State of New York and the rules, regulations, practices, and procedures promulgated thereunder are insufficient to show the required consideration. Indeed, defendants say that plaintiffs were terminable at will. *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983). Moreover, defendants say that the proof cannot justify plaintiffs' recovery for intentional infliction of emotional distress here.

In response, plaintiffs all maintain that they were not "at-will" employees but classified Civil Service public employees whose status as defined by the State constitution and statutory law creates an entitlement which has the force and effect of a contract. They assert that they are entitled to maintain claims for both intentional inference with contract rights, *Inselman v. FNB Financial Company*, 41 N.Y.2d 1078, 1080, 396 N.Y.S.2d 347, 349, 364 N.E.2d 1119, 1120 (1977); and intentional infliction of emotional distress. *Fischer v. Maloney*, 43 N.Y.2d 553, 402 N.Y.S.2d 991, 373 N.E.2d 1215 (1978); *Murphy v. American Home Products Corp.*, *supra*.

After careful consideration of all of the parties' papers, I now deny defendants' motion for partial summary judgment on Count Five of plaintiffs' Amended Complaint.

In summary, defendants' motion is denied in all respects.

Counsel have indicated to the court that discovery is completed. It is important that an early trial date be set in this case. Therefore, counsel shall meet with the court on October 2, 1987, at 9 a.m. to make trial plans. Counsel shall begin to prepare pretrial statements pursuant to the Local Rules of Practice.

Although many facts appear to be in dispute, there are certain basic facts which may be agreed upon by stipulation. Counsel shall be ready to discuss these problems at the meeting on October 2.

It is also important that each party check with witnesses to determine whether a trial beginning in the early part of January is feasible.

So ordered.