**Maria J. CARRERO, Plaintiff–Appellant, Cross–Appellee,**

v.

**NEW YORK CITY HOUSING AUTHORITY, Miguel Peterson, Robert Harold, Al S. Parker, Rosalind A. Linares, Defendants–Appellees,**

**New York City Housing Authority, Defendant–Appellee, Cross–Appellant.**

Nos. 529, 626, Dockets 88–7516, 88–7606.

United States Court of Appeals, Second Circuit.

Argued Jan. 3, 1989.

Decided Nov. 14, 1989.

requested. The United States District Court for the Southern District of New York (Sweet, J.) found that Maria J. Carrero (plaintiff or appellant) was subjected to a hostile working environment by her supervisor, defendant Miguel Peterson, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1982). *See* 668 F.Supp. 196 (S.D.N.Y.1987). Judge Sweet ruled that Carrero's employer, defendant New York City Housing Authority (Authority) was not liable for the hostile environment created by its employee Peterson because his conduct was outside the scope of his employment and the Authority was not itself either negligent or reckless in investigating plaintiff's complaints. *See id.* at 202–03. But the district court also concluded in effect that the Authority was liable for *quid pro quo* sex discrimination and ordered it to reinstate plaintiff to her probationary position.

Carrero appeals from that part of the decision denying her damages for pain and suffering, back pay, immediate reinstatement to her previous position as probationary Assistant Superintendent, and reducing her request for attorney's fees. The defendants cross-appeal, claiming that the elements of a Title VII cause of action were not proved and that the attorney's fee award should have been further reduced. We affirm in part, reverse in part, and remand.

Michael H. Sussman, Sussman & Sussman, Yonkers (Arthur J. Levy, Brooklyn Heights, New York, of counsel), for plaintiff-appellant, cross-appellee.

A. Joaquin Yordan, New York City (Manuel Quintana, Gen. Counsel, New York City Housing Authority, of counsel), for defendants-appellees and cross-appellant.

Before KEARSE, CARDAMONE and WINTER, Circuit Judges.

CARDAMONE, Circuit Judge:

Plaintiff appeals from a judgment that found her subjected to a hostile working environment on account of her sex. She appeals because—other than ordering reinstatement—her claims for compensatory damages were denied, and the amount of attorney's fees granted was less than she

## BACKGROUND

Appellant at the time of trial was a 33–year–old single woman of Puerto Rican descent who had worked for the Housing Authority for more than four years. Defendant Robert Harold was Chief Superintendent for the Housing Authority's South Bronx District, and defendant Rosalind Reyes Linares was its Director of Equal Employment Opportunity. Carrero was assigned in 1982 to a project called Edenwald Houses as a Heating Plant Technician. There she was subjected to insulting and demeaning conduct by co-workers, one of whom dropped his pants in front of her. She complained to the Authority, which censured one of the employees and offered

Carrero a transfer and leave. Notwithstanding this incident appellant persevered and, after passing an examination, was promoted to the position of probationary Assistant Superintendent. Carrero's entitlement to this position is the subject of this litigation.

Thereafter she was assigned to the Morrisania Air Rights Project (Morrisania) where defendant Al S. Parker was the Manager. Her period of probation began on June 12, 1985 and was to continue for one year. Defendant Peterson became acting Superintendent at Morrisania on August 12, two months after appellant's probationary period began. Peterson, also of Puerto Rican background, was in charge of all of the project's maintenance operations. Most importantly, for purposes of this suit, Peterson became Carrero's immediate superior. As Peterson's principal assistant, she relied on his training to learn those procedures and practices required of an Assistant Superintendent. Peterson was responsible for providing written evaluations of appellant's performance.

Peterson's conduct toward appellant was the critical factual issue before the district court. The record reveals that he had been known to call several women at Morrisania by their first names and to be flirtatious. Most of this conduct was harmless and accepted with good humor by co-workers. Carrero's initial relationship with Peterson was cooperative and friendly. But in September 1985, Peterson undertook to change the relationship. On September 4 he touched plaintiff's knee and arm, and on September 10 he entered Carrero's office, touched her on the knee, and kissed her neck. She resisted, and she sought advice the following day from a co-worker, who told her to tell Peterson to stop. On September 12 Peterson told her that she should not discuss their relationship with co-workers—that "what goes on in this office, stays in this office."

Appellant then made it crystal clear to Peterson that she wanted him to stop touching her. She told him about the charges she made in the earlier Edenwald incident and showed him a notice concern-

ing it. Later that same day, when Carrero entered the management office at Morrisania, Peterson in speaking to his secretary referred to Carrero as a "scarecrow." On September 17 when plaintiff and Peterson met to discuss roll call procedures and a report that she had prepared, he kissed her on the neck. After she strongly protested, he promised not to do it again. Despite this assurance, he returned later and asked Carrero if he could examine a pimple on her nose. Then, he asked her to take off her glasses so that he could see her eyes. She refused. Again, he attempted to kiss her, but she was able to avoid him. Peterson then told appellant that he planned to fail her on her probationary report.

The following day, September 18, he came into her office and again made advances by stroking her arm and attempting to kiss her. Carrero told him to stop. Finally, she struck him across the nose with a ruler, knocking his eyeglasses off. In response to Peterson's laughter, Carrero threatened to report him to the Authority. Peterson told her to "shut up" and conduct the morning roll call. At roll call that day and the following day, September 18 and 19, Peterson publicly criticized Carrero's performance, reducing her to tears on the second occasion. Carrero's counsel wrote to the Housing Authority on September 23, detailing Peterson's conduct and requesting that it be halted. On that day, appellant circulated a petition, signed by 12 co-workers, registering her humiliation at being publicly rebuked by Peterson during the September 18 roll call. Appellant also allegedly began to tape-record her encounters with Peterson.

On September 30 an internal Housing Authority investigation into Carrero's charges was initiated by defendant Linares, as the Equal Opportunity officer. The report was issued on November 15, 1985. The charges of sexual harassment (Charge I) and retaliation (Charge II) were described in some detail. The report concluded that Carrero's description of the recited events could not be substantiated, that statements describing the incidents were in conflict, and that Carrero had failed to supply the Office of Equal Opportunity

with tapes, which she had indicated would establish her charges of harassment and retaliation. No further action was taken by the employer.

Prior to completion of Linares' report, Peterson filed his first Supervisory Probationary Report on Carrero. He gave her a satisfactory rating overall, his personal recommendation was favorable, and Carrero's probationary period was accordingly extended. The report indicated that her occasional absences from work would have to be curtailed. Peterson noted that with experience and training, Carrero "could be fully capable of carrying out the responsibilities of [Assistant] Superintendent."

On January 21, 1986—a little over two months after Linares' report responding to Carrero's charges was issued, and when no further employer action on the charges was contemplated—Peterson sent Carrero a memorandum detailing her shortcomings. These included her purported failure to log in work tickets, her absenteeism, a failure of the hot water system, and even her accusations of harassment against him. On January 24 Peterson filed his second Supervisory Probationary Report, this time giving Carrero an unsatisfactory rating. He stated that she lacked the leadership skills, decisiveness and "ability to grasp" procedures necessary to the position of Assistant Superintendent. The report was approved by Morrisania's manager, defendant Parker, and Carrero was thereupon reassigned on February 6, 1986 to her previous status as Heating Plant Technician.

## PRIOR PROCEEDINGS

Perhaps in anticipation of her reassignment and demotion, plaintiff filed a complaint on February 4, 1986; plaintiff filed an amended complaint on June 13, 1986, seeking injunctive and compensatory relief under Title VII and 42 U.S.C. § 1983. In her original complaint she set forth a § 1983 cause of action for violation of her constitutional rights; in the amended complaint, she added a Title VII allegation. One of the remedies she sought was to be restored to her probationary position of Assistant Superintendent. The Authority

offered her employment at another project, Sedgewick Houses, at her permanent classification of Heating Plant Technician. Carrero rejected this offer, and was granted an unpaid leave of absence on the condition that she not "engage in any employment ... in any capacity from which an income, fee, or other remuneration is derived, during the period for which leave has been granted." 680 F.Supp. 87, 87 (S.D.N.Y.1987).

After a year of discovery, the action was tried to the district court. In an opinion dated August 7, 1987, Judge Sweet found that Peterson's advances towards appellant were "sexual in character, unwelcome and harassing" and created a hostile working environment, in violation of Title VII. *See* 668 F.Supp. at 201–02. The district court nonetheless concluded that the Authority could not be held liable for Peterson's conduct because his actions toward Carrero were outside the scope of his employment and within the ambit of conduct expressly prohibited by Authority policy. *Id.* at 202. It also found that the Authority's internal investigation, as reflected in the November 15, 1985 report, was adequate and based on a good faith effort to uncover the facts surrounding Carrero's complaints, *id.* at 199; and, because the Authority was not negligent or reckless in investigating the charges made by Carrero, it was not liable for Peterson's creation of a hostile environment. *Id.* at 203. Although the court noted Peterson's unfavorable report of Carrero's performance of January 24, it ordered the Authority to reinstate her as a probationary Assistant Superintendent. Judge Sweet reasoned that as a result of the hostile environment and Carrero's good faith recourse to the legal system, she had failed to receive the impartial training and evaluation to which she was entitled. Carrero's request for damages for pain and suffering was denied as "no competent evidence" was adduced to support the claim. *Id.* at 203–04.

In a series of remedial orders, the district court further held that appellant: (1) was not entitled to back pay for time spent on leave of absence during pendency of this

action, 680 F.Supp. at 88; (2) should be reinstated as a probationary Assistant Superintendent after the current list of eligible permanent candidates was exhausted, *Carrero v. New York City Housing Auth.*, 86 Civ. 1061, unpublished Order (S.D.N.Y. December 10, 1987); and (3) was entitled to $9,143.41 in costs and $73,361.50 in attorney's fees. *Carrero v. New York City Housing Auth.*, 685 F.Supp. 904, 906 (S.D. N.Y.1988). This appeal and cross-appeal followed.

## DISCUSSION

Plaintiff's original cause of action under 42 U.S.C. § 1983 sought compensatory and punitive damages against Peterson and the Authority for violations of plaintiff's due process and equal protection rights guaranteed under the Fourteenth and Fifth Amendments to the Constitution. Plaintiff also sought an injunction prohibiting the Authority from terminating her probationary appointment. In her amended complaint plaintiff added her Title VII cause of action against Peterson and the Authority. These claims, relying on the factual allegations depicted in the original complaint, alleged both hostile environment and *quid pro quo* discrimination against both Peterson and the Authority.

Although the district court assumed it had jurisdiction under both § 1983 and Title VII, as well as under 42 U.S.C. §§ 1981 and 1982, it did not distinguish plaintiff's § 1983 claims from her Title VII claims in the remainder of its opinion. Its judgment appears to rest entirely upon Title VII law. Because the district court's opinion did not address the complex interaction between a § 1983 and Title VII claims, in resolving the issues raised on this appeal we must disentangle the two.

### I Jurisdiction

#### A. Under §§ 1981 and 1982

Before we discuss the recited issues, several jurisdictional matters must be disposed of. The district court assumed that, in addition to Title VII, it had subject matter jurisdiction under 42 U.S.C. §§ 1981, 1982 and 1983. *See* 668 F.Supp. at 200. The Authority argued that the district court did not have jurisdiction under any of these other federal statutes. Two of the statutes provide a cause of action for deprivation of contract (§ 1981) and property (§ 1982) rights, but in each case the deprivation must allegedly be on account of race. *See, e.g., Saint Francis College v. Al–Khazraji*, 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987); *Zemsky v. City of New York*, 821 F.2d 148, 150 (2d Cir.), *cert. denied*, 484 U.S. 965, 108 S.Ct. 456, 98 L.Ed.2d 396 (1987). Since Carrero makes no allegations that Peterson or the Housing Authority deprived her of her rights on account of her race, ethnicity, or national origin, jurisdiction cannot be found under § 1981 or § 1982. In any event no relief was ordered under either of these sections.

#### B. Under § 1983

The district court did not address whether Title VII provides an exclusive remedy precluding recovery under § 1983. Neither party argued that issue before Judge Sweet or on appeal. Significantly, though the district court concluded it had § 1983 jurisdiction it concerned itself in its discussion almost entirely with Title VII. Yet, because resolution of the question is necessary to determine the limits of the district court's subject matter jurisdiction and the availability of compensatory damages sought by plaintiff, we must discuss this issue *sua sponte.*

Whether Title VII provides the exclusive remedy for employment discrimination against state and local government employees, barring concurrent claims under § 1983, is an unsettled question. In *Great American Fed. Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 370–78, 99 S.Ct. 2345, 2347–48, 60 L.Ed.2d 957 (1979), the Supreme Court held that a claim under 42 U.S.C. § 1985(3) (which, like § 1983, creates no substantive rights but provides only a remedy for violations of substantive rights created elsewhere) cannot be based upon a claimed violation of Title VII. Since *Novotny*, the lower federal courts have

differed on the extent of Title VII's preemption of concurrent § 1983 claims. Some courts, consistent with *Novotny* and *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 20–21, 101 S.Ct. 2615, 2626–27, 69 L.Ed.2d 435 (1981) (§ 1983 claims precluded when Congress has provided a comprehensive and exclusive remedy in other statutes), have held that a Title VII action forecloses a claim under § 1983, when both are based upon the same underlying facts. *See, e.g., Rivera v. City of Wichita Falls,* 665 F.2d 531, 534 n. 4 (5th Cir. Unit A 1982); *Ramirez v. Burr,* 607 F.Supp. 170 (S.D.Tex. 1984); *but see, Johnston v. Harris County Flood Control Dist.,* 869 F.2d 1565, 1575–76 (5th Cir.1989) (when unlawful employment practices violate not only Title VII but also independent rights, plaintiff may proceed under both § 1983 and Title VII). Other courts have not required separate factual bases, but have held that a concurrent § 1983 claim is viable when based on violations of law other than Title VII. *See, e.g., Johnston,* 869 F.2d at 1576; *Starrett v. Wadley,* 876 F.2d 808, 813–14 (10th Cir. 1989).

Although we have not fully addressed the contours of *Novotny* in determining concurrent Title VII and § 1983 claims, we have held that Title VII does not prohibit employment discrimination claims brought under § 1983. *See Vulcan Soc'y of the New York City Fire Dep't, Inc. v. Civil Serv. Comm'n,* 490 F.2d 387, 390 n. 1 (2d Cir.1973). But since *Vulcan* pre-dates *Novotny* and *Middlesex County,* the subject requires a more comprehensive analysis, which must await a case in which it is thoroughly briefed and argued.

For the purposes of this appeal, *Vulcan* remains good law. Further, it has been assumed in this Circuit that a § 1983 claim is not precluded by a concurrent Title VII claim, when the former is based on substantive rights distinct from Title VII. *See Berl v. County of Westchester,* 849 F.2d 712, 716 (2d Cir.1988) (allowing concurrent § 1983 and Title VII claims); *Wade v. Orange County Sheriff's Office,* 844 F.2d 951, 952 (2d Cir.1988) (allowing concurrent §§ 1981, 1983 and Title VII claims based on

common nucleus of facts); *Snell v. Suffolk County,* 782 F.2d 1094, 1106 (2d Cir.1986) (affirming judgment for plaintiffs on concurrent § 1983 and Title VII claims); *Krulik v. Board of Educ.,* 781 F.2d 15, 23 (2d Cir.1986) (examining and rejecting plaintiff's concurrent § 1983 and Title VII claims on other grounds); *Wymer v. New York State Div. for Youth,* 671 F.Supp. 210, 213 (W.D.N.Y.1987) (Title VII does not preclude § 1983 claim based on same nucleus of facts but different source of substantive rights).

In the instant case, plaintiff has sufficiently distinguished her § 1983 claims from her Title VII claim to permit suit on both. *See Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 459, 95 S.Ct. 1716, 1719, 44 L.Ed.2d 295 (1975) (despite Title VII's comprehensive scope, it does not preclude plaintiff from other remedies in search for relief); *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 48–50, 94 S.Ct. 1011, 1019–20, 39 L.Ed.2d 147 (1974) (Title VII claim may be brought along with concurrent claims based on distinctive rights). The original complaint stated causes of action under § 1983 based upon violations of the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments to the Constitution. The Title VII cause of action was only added in the amended complaint after plaintiff received a "Right to Sue Letter" from the Civil Rights Division of the Department of Justice. Thus, the concern in *Novotny*—that allowing a concurrent § 1985 claim based on violations of Title VII would thwart the administrative requirements of the latter's remedial scheme—is not present here. *Cf.* 422 U.S. at 376, 99 S.Ct. at 2351. We conclude therefore that § 1983 confers subject matter jurisdiction over this case on the district court.

## II *Liability of Defendants for § 1983 Violations*

■ Section 1983's reach is limited to defendant Peterson. It provides no remedy against the Authority. Municipalities and their entities may be held liable under § 1983 only when the deprivation of rights

is caused pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Department of Social Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986) ("Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered."). Peterson's actions cannot fairly be attributable to Housing Authority practice or policy. In fact, its stated policies are explicitly non-discriminatory.

Although Peterson exercised some discretion in training and evaluating Carrero, "discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur*, 475 U.S. at 482, 106 S.Ct. at 1299; *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 927, 99 L.Ed.2d 107 (1988) ("mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority"). Nevertheless, a § 1983 cause of action has been proven against defendant Peterson in his personal capacity. The fact that his activities were not authorized by the Authority, or even that they conflicted with express Authority policy, does not render § 1983 inapplicable so long as it can be shown that his actions were performed under color of official authority. *See Monroe v. Pape*, 365 U.S. 167, 172, 187, 81 S.Ct. 473, 476, 484, 5 L.Ed.2d 492 (1961) (unauthorized actions of police officers are actionable under § 1983 when officers act under color of official authority).

■ It is clear from the record that Peterson acted under color of official authority when he ridiculed Carrero in front of co-workers in retaliation for her rejections of his sexual advances. Moreover, as the district court found, Peterson's training and evaluation of Carrero were inadequate as a result of the hostile environment created by his unlawful behavior. Inasmuch as Peterson's authority for training and

evaluation of plaintiff were derived from the state, his actions were under color of official authority and may be reached by an aggrieved employee under § 1983.

### III *Title VII Violations*

#### A. *The Hostile Environment Claim*

■ We turn to the findings that plaintiff was subjected to illegal discrimination under Title VII. Title VII forbids employers from discriminating "against any individual with respect to ... compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...." 42 U.S.C. § 2000e–2(a)(1). Two distinct forms of sexual harassment have now been recognized as violating Title VII's prohibitions. One, termed *quid pro quo* sexual harassment, occurs when an employer alters an employee's job conditions or withholds an economic benefit because the employee refuses to submit to sexual demands. *See Meritor Savings Bank FSB v. Vinson*, 477 U.S. 57, 64–65, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986); *Henson v. City of Dundee*, 682 F.2d 897, 908–11 (11th Cir.1982). The other type of sexual harassment, called hostile environment, occurs when an employer's conduct " 'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.' " *Vinson*, 477 U.S. at 65, 106 S.Ct. at 2404 (quoting 29 C.F.R. § 1604.11(a)(3) (1985)). We discuss the latter type first.

■ To prevail on a hostile environment claim under Title VII the complaining employee must prove that the harassment is "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.' " *Vinson*, 477 U.S. at 67, 106 S.Ct. at 2405 (quoting *Henson*, 682 F.2d at 904). The incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive. *See Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1189 (2d Cir.1987). Whether the sexual harassment constitutes a Title VII violation is determined from the totality of the

circumstances. *See Snell v. Suffolk County*, 782 F.2d 1094, 1103 (2d Cir.1986) (racial harassment); *Henson*, 682 F.2d at 904. *Accord* 29 C.F.R. § 1604.11(b) (1988).

On their cross-appeal, defendants assert that Carrero failed to prove her hostile environment claim. Essentially, their argument comes down to this: Peterson's conduct, though not a paradigm of modern inter-gender workplace relations, was not pervasive enough to trigger relief under Title VII, and federal law does not punish "trivial behavior" consisting of only "two kisses, three arm strokes," several degrading epithets and other objectionable—but ultimately harmless—conduct. They cite cases in which successful Title VII complainants have demonstrated a "concerted pattern of harassment," *Snell*, 782 F.2d at 1103, or two years of "demeaning sexual inquiries and vulgarities" by the employer, *Henson*, 682 F.2d at 899, or four years of pervasive "sexual slur, insult and innuendo," *Katz v. Dole*, 709 F.2d 251, 253–54 (4th Cir.1983). These cases, defendants insist, stand in stark contrast to the comparatively trivial, sporadic and innocuous behavior of Peterson, which they assert involved no proposition or demand for sexual favors or use of force.

We emphatically reject this argument. A female employee need not subject herself to an extended period of demeaning and degrading provocation before being entitled to seek the remedies provided under Title VII. It is not how long the sexual innuendos, slurs, verbal assaults, or obnoxious course of conduct lasts. The offensiveness of the individual actions complained of is also a factor to be considered in determining whether such actions are pervasive. A complaining employee is required to prove that such conduct was unwelcome, that the conduct was prompted simply because of the employee's gender, and that the conduct was sufficiently pervasive to create an offensive environment antithetical to the priority of merit—not sex or some other prohibited criterion—in the workplace. *See Vinson*, 477 U.S. at 68, 106 S.Ct. at 2406.

The facts here plainly demonstrate that Peterson's conduct was unsolicited and unwelcome and that Carrero's working environment was pervasively altered by his advances. It is not true that he made no proposition of sexual activity to Carrero. During the two week period in September, described earlier, Peterson was constantly touching Carrero and attempting to bestow unasked for and unacceptable kisses upon her. As Carrero's immediate superior and chief evaluator, he held a position of power over her that, in combination with his unwelcome sexual advances, was tantamount to coercion. As the district court aptly put it, "Carrero is not required to be constantly on guard against having her supervisor fondle her knee, kiss her on the neck, or seek to kiss her on the lips." 668 F.Supp. at 201–02. We are satisfied that defendant Peterson's conduct created for appellant a hostile working environment in violation of Title VII.

The next question is whether the Housing Authority may be held liable for its supervisor's conduct. In *Vinson*, the Supreme Court declined to rule definitively on employer liability in Title VII hostile environment cases, holding that courts should look to common law agency principles for guidance. *See* 477 U.S. at 72, 106 S.Ct. at 2408. The Court noted that "[w]hile such common-law principles may not be transferable in all their particulars to Title VII, Congress' decision to define 'employer' to include any 'agent' of an employer ... surely evinces an intent to place some limits on the acts of employees for which employers under Title VII are to be held responsible." *Id.* Thus, the Court ruled only that, unlike in cases of proven *quid pro quo* harassment, employers are not automatically liable for a supervisor's creation of a hostile environment. *Id.* at 70, 72, 106 S.Ct. at 2407, 2408. Because the district court implicitly found both hostile environment and *quid pro quo* harassment and predicated the Housing Authority's liability on the *quid pro quo* violation, we do not address the unchallenged issue of its liability for a hostile work environment.

## B. *The Quid Pro Quo Claim*

The district court recognized that the sexual harassment resulted in an alteration of the conditions and privileges of plaintiff's employment and resulted in the loss of a tangible job benefit. 668 F.Supp. at 203. It specifically held that Carrero was denied adequate training and an impartial and fair evaluation of her probationary period. *Id.* at 203–04. As a consequence, the court ordered Carrero reinstated to her probationary position, *id.* at 204, after the list of currently eligible candidates had been exhausted. In short, a *quid pro quo* type of sexual harassment was found to have occurred: Carrero's refusal to submit to sexual demands and her complaints against Peterson resulted in deficient training, an unfair evaluation of her work, and a subsequent demotion. *See id.* at 203.

Defendants now argue that the district court failed to apply the standard applicable to *quid pro quo* Title VII cases, as expressed in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 n. 6, 101 S.Ct. 1089, 1094 n. 6, 67 L.Ed.2d 207 (1981). They urge that, under this standard, a plaintiff must show that she was deprived of a job benefit for which she was otherwise qualified, and that Carrero did not, and could not, demonstrate that she was competent to fill the superintendent position she seeks.

 Hostile environment and *quid pro quo* harassment causes of action are not always clearly distinct and separate. The discrimination which gives rise to them is not neatly compartmentalized but, as this case demonstrates, the two types of claims may be complementary to one another. The hostile environment resulted here in the deprivation of a fair and equal opportunity for appellant to succeed at her position as Assistant Superintendent. The gravamen of a *quid pro quo* claim is that a tangible job benefit or privilege is conditioned on an employee's submission to sexual blackmail and that adverse consequences follow from the employee's refusal. Unlike in hostile environment cases, in *quid pro quo* cases the harassing employee acts as and for the company, holding out the employer's benefits as an inducement to the employee for sexual favors. Accordingly, in a *quid pro quo* sexual harassment case the employer is held strictly liable for its employee's unlawful acts. *See Vinson*, 477 U.S. at 70–71, 106 S.Ct. at 2407–08; *Henson*, 682 F.2d at 905 n. 9.

 In the instant case, Judge Sweet was simply attempting to restore the parties to the *status quo ante* by giving Carrero another chance to prove herself without the handicap of any impermissible sex discrimination. The trial court understood that this was neither a "pure" hostile environment case, *see Vinson*, 477 U.S. at 77, 106 S.Ct. at 2410 (Marshall, J., concurring), nor a pure *quid pro quo* case, for it held that Carrero was denied the impartial training and evaluation to which she was entitled *due, in part, to the hostile environment. See* 668 F.Supp. at 204. At the same time, the very need for the court's order that Carrero be reinstated reflects the *quid pro quo* element of the claim. This direction was well within the court's remedial discretion. *See* 42 U.S.C. § 2000e–5(g).

We therefore conclude that the district court properly ordered plaintiff to be reinstated as a probationary Assistant Superintendent after the current list of candidates is exhausted. The question remains whether, as Carrero contends, the Housing Authority is in contempt for failing to offer her the available openings or, as the Authority contends, Carrero received the offers and turned them down. The resolution of this question is a matter not properly before us but, on the remand otherwise directed, is one the district court should resolve.

## IV *Remedies*

We turn attention now to the remedies denied appellant. Remedies available to the victims of discrimination are committed to the sound discretion of the district court, and absent abuse they will not be disturbed. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415–17, 95 S.Ct. 2362, 2370–71, 45 L.Ed.2d 280 (1975); *see also EEOC v. Enterprise Ass'n Steamfitters*

*Local 638*, 542 F.2d 579, 583, 585–86 (2d Cir.1976), *cert. denied*, 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1977).

## A. *Backpay*

The first of the several denied remedies challenged on appeal is backpay. In determining whether or not to award backpay courts should have in mind that Title VII is the strong solvent Congress used not only to remove the stain discrimination leaves on equality in the workplace, but also to make victims of discrimination whole. Because backpay is central to both purposes, it should be denied only when to do so does not vitiate Congress' purposes in enacting Title VII. *Albemarle*, 422 U.S. at 421, 95 S.Ct. at 2373. An award of backpay is the rule, not the exception. The district court must explain its reasons when it denies such a claim so as to make review intelligible. *See Ford Motor Co. v. EEOC*, 458 U.S. 219, 226, 102 S.Ct. 3057, 3062, 73 L.Ed.2d 721 (1982).

The district court initially denied Carrero's request for backpay, and did so again upon her motion for reconsideration. 680 F.Supp. 87 (S.D.N.Y.1987). Judge Sweet recognized the above-recited policies of Title VII and that backpay was not to be denied simply because there was no proof that the employer acted in bad faith. *Id.* at 87. Nonetheless, he denied Carrero's request for this remedy because she had voluntarily taken a leave of absence without pay, foregoing the alternatives of seeking other employment or accepting the Authority's offer to work as a Heating Plant Technician. *Id.* at 88. Awarding backpay, a district judge concluded, would be tantamount to granting plaintiff a "paid vacation." *Id.* We are unable to adopt this view.

A claimant under the Act is required to mitigate damages, *see Ford Motor Co.*, 458 U.S. at 231, 102 S.Ct. at 3065, but is not required to accept a demotion. *Id.* Thus, a claimant "forfeits [her] right to backpay if [she] refuses a job substantially equivalent to the one [she] was denied." *Id.* at 232, 102 S.Ct. at 3065. The Authority's argument that the proffered job was "sub-stantially equivalent" to that of probationary Assistant Superintendent because the pay differential was only $1,800 annually misses the point. It is not the difference in pay that determines equivalence—though that may be one factor to weigh. Rather, a variety of factors are considered, including where the denied position stands in the employer's hierarchy of responsibility. Hence, plaintiff did not have to accept the job as Heating Plant Technician.

The district court acknowledged that Carrero was not required to accept a demotion to mitigate damages and that the Heating Plant Technician position was a demotion. Yet, it held that Carrero's "choice" to accept an unpaid leave of absence (which the court assumed was conditioned upon her foregoing any other sources of income) rather than one of her other "alternatives" of accepting the demotion or resigning from the Authority and searching for other work prevented it from awarding back pay.

Because the position of Heating Plant Technician was a demotion, plaintiff was not required to choose it to mitigate her damages. Thus, it was not an alternative to be considered in the decision to deny backpay. The second alternative, resignation and search for a different employer, is also a non-alternative. As the defendants themselves point out in their brief, by choosing to accept an unpaid leave of absence Carrero "at least guaranteed the certainty of a job, regardless of the outcome of her case, [and] her Civil Service title of Heating Plant Technician, without loss of any seniority ... during her leave." To require a plaintiff in Title VII litigation to risk whatever job security she retains after experiencing *quid pro quo* discrimination in order to preserve a claim for backpay puts her in the same spot as the sailor caught between the devil and the deep.

This is especially dilemmatic when plaintiff's choice to preserve her remaining job benefits may require her to forego any other source of income. In other words, the Authority's grant of a conditional unpaid leave of absence *prohibited* plaintiff from mitigating damages. In light of the

predicament Carrero faced when she chose to forego an income (uncertain as to the outcome of her case) in order to preserve her remaining job entitlements, we can hardly consider that backpay amounts to a "paid vacation." As the Supreme Court noted in *Ford Motor Co.*, in all cases "paying backpay damages is like paying an extra worker who never came to work." 458 U.S. at 229, 102 S.Ct. at 3064. That plaintiff is paid for a period during which she performed no services is inevitable any time backpay is awarded. Thus, the Authority is liable for backpay, the amount of which is to be determined by the district court.

### B. *Damages for Pain and Suffering*

Appellant's request for damages for pain and suffering that she claims resulted from Peterson's discriminatory conduct was also denied. The district court was of the opinion that plaintiff had presented "no competent evidence" of any suffering or humiliation due to the hostile environment. *See* 668 F.Supp. at 204.

 Having found liability against the Authority only under Title VII and none under § 1983, no award for pain and suffering may be recovered from the Authority. This follows because neither compensatory nor punitive damages are recoverable under Title VII. *See Shah v. Mt. Zion Hosp. & Medical Center*, 642 F.2d 268, 272 (9th Cir.1981); Annotation, *Award of Compensatory Damages, Aside From Backpay or Frontpay, for Violations of Title VII*, 48 A.L.R.Fed. 338 (1980) (Supp. 1988). But inasmuch as Peterson's actions violated Carrero's rights to equal protection and due process under the Fourteenth and Fifth Amendments, she has stated a valid § 1983 claim against him. *See Carrion v. Yeshiva University*, 535 F.2d 722, 729 (2d Cir.1976) ("[n]o greater or lesser protection against discriminatory practices is provided" by § 1983 than by Title VII); *Starrett v. Wadley*, 876 F.2d at 814 (sexual harassment can violate the Fourteenth Amendment right to equal protection of the laws). Thus, Peterson is liable for compensatory damages under § 1983.

The district court determined that plaintiff had not presented sufficient evidence of any suffering due to Peterson's creation of a hostile environment. In denying plaintiff damages the trial court stated that "[t]here is no competent evidence that any anxiety, or nervousness has resulted from the events accounted above." 668 F.Supp. at 204. This statement is somewhat ambiguous. It is not clear whether the trial court found that plaintiff failed to present sufficient evidence of pain and suffering or whether her evidence is not *credible*. Because we believe that a finding of the former would be clearly erroneous, we remand this issue to the district court in order for it to clarify its findings.

The record amply supports that claimant presented sufficient evidence of substantial humiliation, discomfort, stress and anxiety. Much of the proof before the trial court was not speculative. It showed that Carrero twice had to consult a doctor, obtained a prescription for valium, complained to others of anxiety and nervousness, experienced tension in her family relationships, and suffered a loss of self-confidence. Some of this testimony was independently supported by appellant's co-workers' descriptions of Carrero crying. Such evidence, if credible, is sufficient to support an award for pain and suffering where, as here, the defendant's conduct violated plaintiff's constitutional rights to equal protection and due process. There was ample proof that the violation of plaintiff's constitutional rights impacted on her economically—as the district court concluded. Yet, it may have also affected her psychological well-being. If this is so, such conduct entitles plaintiff to an appropriate award of damages for pain and suffering under § 1983. We therefore remand the issue of plaintiff's pain and suffering to the district court for it to make explicit findings on the credibility of plaintiff's proffered evidence.

### C. *Attorney's Fees and Costs*

 In a thorough opinion dated May 9, 1988 Judge Sweet considered Carrero's motion for attorney's fees and costs pursuant

to 42 U.S.C. § 1988. He rejected plaintiff's request for $131,565 in fees and $10,670.85 in expenses, and defendants' argument that a 50 percent reduction was warranted. The district court reviewed plaintiff's claim and determined, in its discretion, to reduce the amount sought by 35 percent. The trial judge explicitly considered and rejected defendants' claims that Carrero's counsel submitted excessive time expenditure reports and that counsel's claimed rate of compensation was excessive. *See Carrero v. NYCHA,* 685 F.Supp. at 907–08. Moreover, it reviewed Carrero's requested amount with careful consideration of her unsuccessful claims and counsel's alleged failure to document certain fee-related activities. We find no error in the trial court's treatment of the fee issues. Yet, in light of the fact that we have reversed the denial of backpay, and remanded the issue of compensatory damages against defendant Peterson, the district court will have to adjust its award of attorney's fees to reflect the reasonable fees incurred by plaintiff in litigating the backpay issue and perhaps the compensatory damages issue as well.

## CONCLUSION

On remand, the district judge should determine the reinstatement issue, decide the amount of backpay to which appellant is entitled from the Authority under Title VII, and determine whether a compensatory award for appellant against defendant Peterson for pain and suffering under § 1983 is warranted. Such determinations will require an adjustment for attorney's fees, in an amount as the district court in its discretion determines. The judgment appealed from is accordingly affirmed in part, reversed in part, and remanded for further proceedings in accordance with this opinion.