**Kathleen E. POULSEN, Plaintiff,**

**v.**

**CITY OF NORTH TONAWANDA, NEW YORK; Lloyd Graves, Individually and as Chief of Police of the City of North Tonawanda; and John Sedlacek, Defendants.**

**No. Civ–90–206C.**

United States District Court, W.D. New York.

Jan. 26, 1993.

Walsh, Roberts & Grace (Thomas E. Roberts, of counsel), Buffalo, NY, for plaintiff.

Flaherty, Cohen, Grande, Randazzo & Doren, P.C. (Robert A. Doren, of counsel), for defendants City of North Tonawanda and Lloyd Graves.

Jaeckle, Fleischmann & Mugel (Thomas E. Brydges, of counsel), Buffalo, NY, for defendant John Sedlacek.

CURTIN, District Judge.

## BACKGROUND

This action is brought by Officer Kathleen Poulsen against the City of North

Tonawanda ("the City"), Police Chief Lloyd Graves, and Lieutenant John Sedlacek for *quid pro quo* sexual harassment and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.;* and the New York State Human Rights Law § 290, *et seq.*, prohibiting discrimination in employment on the basis of gender and retaliation for filing a complaint. Plaintiff also seeks relief from defendants' alleged violation of her First Amendment right to freedom of speech and freedom of association and her Fourteenth Amendment right to equal protection under 42 U.S.C. § 1983. All three defendants move for summary judgment pursuant to Fed.R.Civ.P. 56(b) for all causes of action in this suit.

FACTS

In January 1989, when Kathleen Poulsen had been a police officer with the City of North Tonawanda Police Department for approximately one year, she began working two evenings a week with Lieutenant John Sedlacek. Poulsen and Sedlacek commenced a sexual relationship in February 1989, which lasted until early June of the same year. Two weeks after the relationship ended, Poulsen filed a sexual harassment complaint against Sedlacek with Acting Chief of Police Captain Thurston Gilman. In her complaint, Poulsen claimed that Sedlacek forced her to have sexual relations, with threats that she would suffer retaliation on the job if she did not acquiesce. She explained that she had waited until June to inform anyone about the problem because once the relationship terminated, "I wanted to bail out before Sedlacek destroyed me." Item 69, Ex. 4 at 548. Captain Gilman encouraged her to contact the Equal Employment Opportunity Commission ("EEOC") and forwarded her complaint to Chief Graves, who was vacationing at the time. Graves instructed the captain of Poulsen's shift to talk to everyone about what constituted sexual harassment and to stop all offensive behavior. Item 69, Ex. 6.

Graves began his investigation of Poulsen's sexual harassment complaint when he returned from vacation on July 3. Under the collective bargaining contract, the Police Department has 25 days to investigate and bring disciplinary charges against a police officer. Item 70, Sedlacek Aff. Ex. A, ¶ 5.86. Within those 25 days, Chief Graves conducted 33 interviews of officers in the Department to ascertain what they knew of the alleged harassment. Most of those interviewed professed no knowledge of a relationship between Poulsen and Sedlacek.

Graves was informed early in his inquiry that Karen Dolan, the only other female police officer on the force, had complained of problems with Sedlacek. Item 77, Ex. B, p. 621. Yet, Graves waited to interview Dolan until August 4. At that time, Dolan outlined various examples of sexual harassment by Sedlacek directed at her during 1989, including obnoxious and demeaning behavior and other attempts to embarrass her. Item 77, Ex. B. at 658–69. Graves apparently never followed up on Dolan's complaints. Item 77, ¶¶ 19–20.

Graves also talked with Sedlacek several times. Graves first called Sedlacek at home on July 5, while the Lieutenant was on vacation. Sedlacek at that point denied all knowledge or involvement with Poulsen outside the professional relationship. Item 69, ¶ 19. Sedlacek came into Graves' office the next day to read the EEOC letter and reiterated that he knew nothing about it. Item 77, Ex. B. at 605. Graves gave Sedlacek a copy of the EEOC charges on July 11 but did not discuss the matter with him again until July 17. By this date, Graves had received information corroborating Poulsen's allegations against Sedlacek. However, Sedlacek continued to deny the existence of the relationship. Item 69, ¶¶ 23–27. On July 25, Graves requested that Sedlacek submit a written statement regarding Poulsen's allegation. Sedlacek refused through his attorney. Item 77, ¶ 17. Apparently, Graves never confronted Sedlacek with any evidence of Sedlacek's involvement or conducted more than a casual interview with him. Item 77, Ex. C.

Graves determined as a result of his investigation that there was not enough evi-

dence of sexual harassment to discipline Lieutenant Sedlacek despite his corroboration of Officer Poulsen's allegations that she and Sedlacek had had sexual relations on several occasions (Item 69, Graves Aff.; Item 77, Ex. C at 122, 131–134), and evidence from Officer Dolan that she, too, had been harassed by Sedlacek. Graves concluded that the evidence he gathered during his investigation did not substantiate Poulsen's claims that she was coerced into a sexual relationship and did not warrant filing charges against Lieutenant Sedlacek. Item 69, ¶¶ 39–44.

Chief Graves reassigned Poulsen at her request in order to keep her separated from Sedlacek. According to Poulsen, this separation did not end the harassment. She left early for a scheduled vacation in August and remained out on medical disability for major depression until January.

In response to Poulsen's complaint of July 3, 1989, the EEOC conducted its own investigation. In October 1989, the Commission found probable cause to believe that Title VII violations of both *quid pro quo* and environmental sexual harassment had occurred. Item 70, Sedlacek Aff., Ex. F. The Commission thereafter initiated conciliation between Poulsen and the City. Neither Graves nor Sedlacek were named as individual respondents the EEOC charge, although Sedlacek's name appeared in the body of the charge. Chief Graves was directed by the City to assist the EEOC in investigating Poulsen's charge. He also participated in the conciliation attempts on behalf of the City. Item 69, Graves. Aff. ¶¶ 14, 61.

Sedlacek appeared as a witness at the EEOC proceeding. He admitted having sexual relations with Poulsen on numerous occasions between February and June, but insisted the relationship had been completely consensual. Sedlacek explained during the EEOC proceeding that he had initially denied the relationship, because at the time of the investigation he had still been married. Sedlacek testified that he terminated the relationship because Poulsen had gone to see his wife and wanted to get more serious with him. Sedlacek's counsel observed his client's testimony at the EEOC proceeding but did not act as his representative because the EEOC advised the attorney that Sedlacek was not a charged party. Item 70, Sedlacek Aff. ¶ 17; Lewis Aff. ¶ 4.

As a result of the EEOC proceedings, a conciliation agreement was drafted which specified that Poulsen would be reinstated in her position when she was able to return to work, with all information concerning the incident removed from her personnel file. Sick leave, personal leave, lost salary, and unreimbursed medical expenses would all be restored. Finally, the City agreed to reassign Poulsen to a different squad so that she and Sedlacek would never have to work together. Item 69, Graves Aff. ¶¶ 60–63.

This agreement was never signed by either Poulsen or the City. The City claims, and Poulsen does not dispute, that the provisions of the unsigned agreement were all implemented by February 1990. There is a dispute over the extent and nature of Poulsen's participation in drafting the agreement. Item 69, Graves Aff. ¶ 62.

Poulsen returned to work in January 1990. Between January and December, Poulsen repeatedly complained to Graves about harassing and retaliatory actions against her by Sedlacek and others. Item 77, Ex. B, at 712 to end. The City and Chief Graves claim that each reported incident was investigated, but none warranted punitive action against any of the individuals. Poulsen commenced a second medical leave for depression in September 1990, which continues to date. She claims that the continuing hostile work environment she was forced to endure upon her return to work in January contributed to her relapse.

Poulsen initiated suit against the City of North Tonawanda, Chief of Police Lloyd Graves, and Lieutenant John Sedlacek [1] for sex discrimination through *quid pro quo* sexual harassment and the creation of a hostile work environment. Defendants

1. The North Tonawanda Police Benevolent Association, Inc. and City of Tonawanda Mayor Betty Hoffman were originally named as defendants, but later dropped from the suit.

move for summary judgment on all causes of action.

DISCUSSION

Summary judgment may be given only if the pleadings, depositions, and affidavits "show that there is no issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). All ambiguities are resolved in favor of the non-moving party. *Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir.1991).

*I. Title VII Claims*

A. Offer of Full Relief

The City and Graves first argue that Poulsen is precluded from the instant Title VII suit because she was offered full relief in the proposed EEOC conciliation agreement. The agreement offered Poulsen: 1) reinstatement in her position when she was able to return to work; 2) removal of all information concerning the incident from her personnel file; 3) restoration of sick leave, personal leave, lost salary, and unreimbursed medical expenses; and 4) reassignment to keep her separated from Lieutenant Sedlacek. The defendants claim that Poulsen and her attorney were kept informed about the proposed agreement and agreed with its provisions. Although neither party ever signed the agreement, Poulsen received all the benefits within one month of her return to work. Item 67 at 5–6; Item 83 at 3. Defendants contend that the implementation of the proposed conciliation agreement mandates dismissal of all claims against both the City and its agent, Lloyd Graves. Item 67 at 8.

Poulsen counters that the agreement was never formally offered or accepted by the City. She accepted coverage of her medical expenses, backpay, and restoration of leave (Item 78 at 2) when she returned to work, but claims that sexual harassment and a hostile work environment continued. According to Poulsen, full relief must include affirmative action on defendant City's part to end the hostile work environment as well as the *quid pro quo* sexual harassment. Item 78 at 2. Moreover, Poulsen claims she was issued a right-to-sue letter by EEOC on February 23, 1990, because the City had never properly responded to or accepted the Commission's proposed Conciliation Agreement.

A claimant who is offered full relief in the administrative process must either accept the relief offered or abandon the claim. *Wrenn v. Secretary of Veterans Affairs*, 918 F.2d 1073, 1078 (2d Cir. 1990). Affirmative and other equitable relief is available under Title VII, 42 U.S.C. § 2000e–5(g), and is not limited to "tangible" benefits such as reinstatement or backpay. *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1975). In the instant case, the record is unclear as to the precise relief Poulsen was seeking during the conciliation process, or if in fact Poulsen ever specified at the time what relief would be acceptable to her. The City argues that since punitive and compensatory damages are not available to Poulsen under Title VII (*Carrero v. New York City Housing Authority*, 890 F.2d 569, 581 (2d Cir.1989)), its conciliatory offer made during the EEOC conciliation process and accepted when Poulsen returned to her job represents the full relief to which she is entitled. The City also argues that Poulsen is not entitled to usurp the role of final policymaker by demanding implementation of specific policies as part of her relief. Item 83 at 4.

Poulsen counters that the proposed agreement did not constitute full relief because it did not include the establishment of policies or procedures for making, processing, and preventing sexual harassment. It is reasonable to expect that relief under Title VII would include an end to the discriminatory conditions that instigated the EEOC complaint. A complainant who returns to work without loss of pay or job status is not made whole if she continues to face harassment and discrimination. Poul-

sen may not be entitled to dictate policy to the City of North Tonawanda and her recovery of monetary damages may be limited under Title VII, but she is not barred from suit to end the discriminatory behavior which she alleges continued after she returned to work.

■ Moreover, the EEOC never certified that the proposed settlement constituted full relief. *See* 29 C.F.R. § 1613.216(a)(7). Rather, the Commission issued a right-to-sue letter at Poulsen's request. Item 76, Ex. B. The City asserts that the issuance of a right-to-sue letter does not mean that conciliation has failed, but only precludes the Commission from formalizing the agreement. However, 29 C.F.R. § 1601.28(d) clearly states that the Attorney General will issue the notice of right to sue against a Governmental respondent, "[w]hen there has been a finding of reasonable cause by the Commission, there has been a failure of conciliation, and ... a charging party has requested a notice of right to sue...."

In order to win summary judgment on this motion, defendants must show that there are no triable issues of fact that the offer made constituted full relief and was refused. The two parties not only dispute what constitutes full relief, but cannot agree whether an offer was made or accepted. The issuance of a right-to-sue letter by the EEOC strengthens Poulsen's argument that a factual dispute over an offer of full relief still exists, precluding summary judgment of this claim.

B. Failure to Name Defendants in the EEOC Charge

■ Defendants Sedlacek and Graves assert that the court has no jurisdiction over them because Poulsen failed to list them as respondents in her prior EEOC charge. Title VII, 42 U.S.C. § 2000e-5(f)(1), provides that once administrative remedies are exhausted, an aggrieved party may bring a civil action "against the respondent named in the charge." The general rule is that individuals not named as respondents in an EEOC charge cannot be sued under a subsequent Title VII action. *Silver v. Mohasco Corp.*, 602 F.2d 1083, 1086 n. 7 (2d Cir.1979); *Giuntoli v. Garvin Guybutler Corp.*, 726 F.Supp. 494, 497 (S.D.N.Y.1989). Inclusion of all parties in the initial charge increases the likelihood of resolution of the dispute by the administration and insures that all parties will have the opportunity to represent their own interests in any conciliation effort. *See Travers v. Corning Glassworks*, 76 F.R.D. 431 (S.D.N.Y.1977).

■ However, courts have encouraged a "flexible stance in interpreting Title VII's procedural provisions," *Egleston v. State University College at Geneseo*, 535 F.2d 752, 755 (2d Cir.1976), because complaints are often made by persons unversed in the intricacies of EEOC procedure. An exception to the rule barring subsequent suit can be made where there is a clear identity of interest between the named respondent and the subsequent defendant. The Second Circuit has recently adopted the *Glus* test to determine whether an identity of interest exists which would excuse the failure to name the defendant in the EEOC complaint. The four factors of the test are:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir.1991), *quoting Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3rd Cir.1977).

*1. Chief Graves*

■ When the test is applied to Chief Lloyd Graves, it is clear that he should not

be dismissed as a defendant despite Poulsen's failure to name him in the EEOC charge. While Poulsen could reasonably have ascertained that Graves would be responsible for resolving the problems outlined in her complaint, she apparently had no grievance against him personally at the time her EEOC charge was filed. She admitted that Graves was unaware of any alleged acts of sexual harassment prior to her complaint. Her allegations concerning Graves are primarily confined to his actions and omissions *after* filing. Graves argues that his subsequent conduct could have been made subject to the charge. Poulsen had retained counsel and had amended her EEOC complaint to include the Union, demonstrating that she understood she could amend her charge. Item 90. However, Poulsen counters that she was not required to include improper subsequent conduct by the parties charged with the duty to act upon the initial complaint.

Secondly, Graves and the City had virtually identical interests with respect to voluntary conciliation. Both parties wished to resolve the issue to avoid suit and further departmental problems. Graves argues that he was never given notice that he would be personally liable and never given an opportunity to resolve a dispute over his alleged misconduct. Item 90 at 2. However, Graves had control over the Departmental investigation and responsibility for carrying out a conciliation agreement. He could reasonably assume that Poulsen would take further action if he failed in this responsibility.

Graves was not prejudiced by Poulsen's failure to name him personally. Although there is some dispute over whether he participated directly in the conciliation process, there is no question that he was kept apprised and was fully aware that Officer Poulsen felt the problem had not been resolved. Finally, Chief Graves was designated by the named defendant, the City of North Tonawanda, as the contact for EEOC responsible for resolving the sexual harassment.

*2. Lieutenant Sedlacek*

Application of the same factors to Lieutenant Sedlacek leads to the conclusion that Sedlacek was actually prejudiced by Poulsen's failure to name him as a respondent, and he should be dismissed from the Title VII claim. Since Poulsen identified Sedlacek in the body of the original complaint as the perpetrator of the sexual harassment, she was clearly able to ascertain his role. One court found that the instructions on the EEOC complaint form could easily mislead pro se complainants into not listing individuals as respondents and ruled that identification of a party as the perpetrator in the "Particulars" section of the form gave both the EEOC and the individual notice of the plaintiff's claim. *Dickey v. Greene,* 603 F.Supp. 102, 106 (E.D.N.Y.1984). This is exactly where defendant Sedlacek was named. However, Poulsen made a supplemental complaint against her union (Item 70, Sedlacek Aff. Ex. C), and she was represented by counsel at that point. Defendant Sedlacek points to this as an indication that Poulsen knew the complaint could be amended, and she could have included him as well.

Unlike Graves, Sedlacek's position was distinctly different from that of the City of North Tonawanda. He is a relatively low-level supervisory employee with the City and was under internal investigation by the Police Department at the time the EEOC's investigation was pending. He faced the possibility of discipline, or even discharge, if the outcome of the Police Department's investigation sustained Poulsen's allegations. The City's consideration in attempting voluntary conciliation over Poulsen's EEOC claim was to protect itself from suit. A conciliation agreement between the City and Poulsen had the potential to have adverse consequences for Sedlacek. The fact that the City declined to indemnify Lieutenant Sedlacek or represent him underscores this difference in position.

Sedlacek was also never served with an EEOC Determination nor contacted by the EEOC to participate as a party to the conciliation process. When Sedlacek appeared as a witness during the EEOC's inquiry,

neither he nor his attorney was informed that he was or might become a charged party. Item 70, Sedlacek Aff. ¶¶ 18 & 19. Sedlacek's attorney at the time stated that had he been advised that his client was exposed to Title VII liability, he would not have proceeded as he did, and probably would have referred Sedlacek to other counsel based on his own inexperience. Item 70, Lewis Aff. Sedlacek's only participation in the EEOC proceeding was as a witness. His attorney was present during his testimony but only as an observer, having been assured by the EEOC investigator that Sedlacek was merely a witness, not a charged party. Item 70, Sedlacek Aff., ¶ 17, Lewis Aff., ¶¶ 2–4. Sedlacek was never served with a copy of the EEOC charge, nor did he have an opportunity to review Poulsen's written allegations before testifying. Therefore, although present for a portion of the proceedings, Sedlacek was not a party, nor was he represented in any manner by the respondents present at conciliation.

Finally, while Poulsen alleges that Sedlacek informed her that he had at least informal power within the Department, there is no allegation that the Police Department and the City were representing his interests during the EEOC investigation. The extent of Poulsen's participation in the conciliation efforts, particularly the drafting of the proposed agreement, is in dispute. However, Poulsen's attorney must have known that neither Sedlacek nor his attorney participated in the actual conciliation efforts, whatever representations Lieutenant Sedlacek may have made to Officer Poulsen regarding his stature. Moreover, Poulsen had ample opportunity to supplement her EEOC charge to include Sedlacek once it became evident he was not party to the conciliation.

Since Poulsen failed to list Sedlacek as a respondent in her EEOC charge and Sedlacek has no identity of interest with the named party defendant, this court has no jurisdiction over Sedlacek for the Title VII claim.

C. Sedlacek's Other Contentions

Sedlacek also argues that plaintiff's Title VII claim against him should be dismissed because in his position as lieutenant in the Police Department, he could not be defined as Poulsen's "employer" or "agent" of her employer as contemplated by the statute. He further asserts that even if she overcame this problem, Poulsen has not established the requisite elements of *quid pro quo* sexual harassment to find liability against him. The court is not obliged to reach these issues, since Sedlacek is properly dismissed from the Title VII suit for failure to name him as a respondent in the EEOC complaint.

*II. § 1983 Claims*

A. Constitutional Violations

To state a claim under § 1983, a plaintiff must allege 1) a violation of rights secured by the Constitution and laws of the United States, and 2) such violation was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Defendants first contend that Poulsen's § 1983 claim is precluded by her Title VII claim, because Title VII provides its own remedy for employment discrimination, and Poulsen has not offered specific allegations of constitutional violations distinct from those covered by Title VII.

Section 1983 is a remedial statute which creates no independent rights. Rather, it is used to enforce federal rights derived from other sources for which no other adequate enforcement mechanisms exist. Since Title VII provides for its own enforcement, a concurrent § 1983 claim is precluded unless it is based on substantive rights distinct from Title VII. *Carrero,* 890 F.2d 569.

*1. Equal Protection*

Poulsen alleges that sexual harassment by defendants violated her Fourteenth Amendment right to equal protection, and the creation of a hostile work environment and other retaliatory actions deprived her of her First Amendment

rights to freedom of speech and freedom of association. Several circuit courts have ruled that sex-based discrimination, including sexual harassment, is actionable under § 1983 as a violation of equal protection. *See, e.g., Pontarelli v. Stone,* 930 F.2d 104 (1st Cir.1991); *Bohen v. City of East Chicago, Ind.,* 799 F.2d 1180 (7th Cir.1986); *Headley v. Bacon,* 828 F.2d 1272 (8th Cir. 1987); *Starrett v. Wadley,* 876 F.2d 808 (10th Cir.1989). Poulsen has produced sufficient evidence through her own affidavit and depositions of Officers Dolan and Jurasz (Item 77, Exs. E & F) that she and Officer Dolan were subjected to sexually harassing comments, jokes, offensive touching and ridicule to withstand a motion for summary judgment against a claim of sex discrimination.

*2. Freedom of Speech*

Sedlacek argues that the alleged conduct of which Poulsen complains fails to rise to the level of a First Amendment violation because it did not limit any speech that was a matter of public concern nor restrict her freedom of association. A First Amendment retaliation suit by a public employee generally is available whenever the employee's speech is on a matter of "public concern" and the employee's interests as a citizen outweigh the efficiency interests of the public employer. *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). The court must look at the speaker's motive "in analyzing whether the speech qualifies as a matter of public concern, *i.e.,* whether the speech *was calculated* to disclose misconduct or dealt with only personal disputes and grievances with no relevance to the public interests." *Conaway v. Smith,* 853 F.2d 789, 796 (10th Cir.1988) (emphasis in original). "Speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials, in terms of content, clearly concerns matters of public import." *Id.*

Although Poulsen's primary motivation for filing her EEOC complaint was to stop the harassment against her personally, she raised an issue of public concern in criticizing the treatment of women in the Police Department. After filing her complaint, the hostile work environment to which she was subjected intensified. She alleges that she was isolated in the Department, ridiculed and humiliated by Sedlacek and others, and that Chief Graves did nothing to prevent this retaliatory behavior, but continued to challenge her to provide more evidence. Item 76, ¶¶ 23–28.

Sexual harassment within the Police Department is a matter of public concern, more so when the complaint involves a local police force and the ability of its officers to function. In weighing this public concern against the need for efficiency of the police force, it would appear that preventing or abating sexual harassment could only improve the efficiency of the Department. Poulsen's allegations that her First Amendment rights to freedom of speech and freedom of association were violated are sufficiently supported by the record to establish a § 1983 claim.

B. Action Under Color of State Law

Defendant Sedlacek argues that even if his alleged actions constitute sexual harassment of Constitutional magnitude, Poulsen has not established a § 1983 claim because he was not acting under color of state law. Indeed, Sedlacek seems to argue that sexual harassment can never be under color of state law. "Acts of alleged sexual harassment are not capable of being in fulfillment of tasks and obligations normally assigned to police officers, or made possible by the power conferred upon officers by the government or by virtue of their position." Item 71 at 43. He urges the court to follow *Murphy v. Chicago Transit Auth.,* 638 F.Supp. 464 (N.D.Ill. 1986), which held that defendants who harassed another employee during working hours were not acting under color of state law because the harassing behavior had nothing to do with, and bore no similarity to, the nature of their jobs.

Poulsen counters that Sedlacek's retaliation against her for her initial complaint to Chief Graves, his active role in creating a hostile work environment, and his continu-

ing direct harassment of both her and the other female police officer on the force was an abuse of the exercise of his supervisory authority created under state law. Item 78 at 12. A person "acts under color of state law when he abuses the position given to him by the State. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West,* 487 U.S. at 50, 108 S.Ct. at 2255 (citation omitted). Sedlacek, as a police officer, is a public employee. Since the extent of the Lieutenant's formal authority on the force over his subordinates such as Officer Poulsen is still in dispute between these parties, a determination as to whether Sedlacek's alleged harassment falls within the parameters of "acting under color of state law" must necessarily be factually based.

In *Carrero,* the Second Circuit found a supervisor who had sexually harassed his employee to be acting under color of state law. His actions in creating a hostile work environment and his failure to give proper training were done under color of official authority, inasmuch as this authority was derived from the State. 890 F.2d at 577. Sedlacek argues that he had no real supervisory authority over Poulsen, even on the days he was lieutenant on her shift. According to the employment contract between the police officers' union and the City, a lieutenant has no power to hire, fire, promote, transfer, or even discipline. Item 70, Sedlacek Aff., Ex. A.

Poulsen contends, however, that Sedlacek had a great deal of *de facto,* informal power within the Department. She argues that Sedlacek used his supervisory power to commit sexual harassment. He was able to continue the harassment following the complaint because of "the power conferred by his position and Chief Graves' failure to check that power in an effective fashion." Item 78 at 13.

Several cases have declined to find liability under § 1983 against a co-employee for harassment when the harassment did not involve use of state authority of position. *See, e.g., Hughes v. Halifax County Sch. Bd.,* 855 F.2d 183, 186–87 (4th Cir.1988), *cert. denied,* 488 U.S. 1042, 109 S.Ct. 867, 102 L.Ed.2d 991 (1989); *Woodward v. City of Worland,* 977 F.2d 1392 (10th Cir.1992). (Typically, liability under the Equal Protection Clause for sexual harassment in the workplace is predicated upon some authority that the wrongdoer has over the victim. Otherwise, it is difficult to establish that the abusive action was perpetrated "under color of state law" rather than as an essentially private act of sexual harassment.) However, when the harasser has some authority over his female victim and uses that authority to treat her differently from her male co-workers, this activity constitutes sexual harassment under the color of state law within the meaning of § 1983.

The parties in this case dispute the extent of Lieutenant Sedlacek's authority over daily assignments and performance evaluations as well as the degree of influence with those in higher authority within the Department. The evidence submitted for and against the summary judgment motion indicates that a lieutenant in the City of North Tonawanda Police Department does not have much formal decisionmaking authority over his subordinate officers but does not seem to preclude the power to make daily work assignments and effectively evaluate performance, as the affidavits offered by Poulsen suggest.

The nature and degree of Sedlacek's authority within the City of North Tonawanda Police Department remain a factual dispute between the parties. Although a lieutenant's responsibility appears limited according to the table of command, Poulsen has offered evidence that Sedlacek's actual authority within the Department exceeded his status on paper. Therefore, summary judgment dismissing Lieutenant Sedlacek from the § 1983 is denied as premature.

C. Liability of a Municipality

The City contends that even if Sedlacek was acting under color of state law, it cannot be held liable for his actions. In order to state a § 1983 claim against a municipality, plaintiff must allege that: 1) her harm was caused by a constitutional

violation; and 2) the City is responsible for the violation. *Collins v. Harker Heights,* — U.S. —, —, 112 S.Ct. 1061, 1063, 117 L.Ed.2d 261 (U.S. Feb. 25, 1992) (No. 90–1279). The constitutional violations were discussed in Part IIA, *supra.* The municipality's responsibility for those violations is at issue here.

Although a municipality can be considered a "person" for purposes of § 1983, (*Monell v. N.Y.C. Dept. Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)), its liability is limited to violations caused by an official policy or custom. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible...." *Id.* at 694, 98 S.Ct. at 2037–38.

A municipal policy may be inferred from the informal acts or omissions of supervisory municipal officials. "[M]unicipal inaction such as the persistent failure to discipline subordinates who violate civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of *Monell.*" *Bastista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983), citing *Turpin v. Mailet,* 619 F.2d 196, 201–02 (2d Cir.), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980). *See also Fiacco v. City of Rensselaer,* 783 F.2d 319 (2d Cir.1986), *cert. denied,* 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987) (a municipality may be subjected to § 1983 liability on the basis of a policy that tolerates unconstitutional acts by its employees). However, a policy or custom may only be inferred if the acts or omissions of a municipality's supervisory officials are serious enough to amount to "deliberate indifference" to the constitutional rights of a plaintiff. *Villante v. Dept. of Corrections,* 786 F.2d 516, 519 (2d Cir.1986). A mere lack of responsiveness, failure to supervise employees, or nonfeasance has been held insufficient to establish a causal link between a municipal custom or practice and a constitutional violation. *Canton, Ohio v. Harris,* 489 U.S. 378, 381, 109 S.Ct. 1197, 1201, 103 L.Ed.2d 412 (1989). Moreover, a policy cannot normally be inferred from a single incident or omission. *Turpin,* 619 F.2d 196.

### *1. Quid Pro Quo Claim*

The City first argues that it cannot be held responsible for Sedlacek's alleged *quid pro quo* sexual harassment of Poulsen which occurred before she complained to Chief Graves. *Monell* explicitly rejects *respondeat superior* liability for acts or omissions of employees. The City claims that even assuming that Sedlacek purposely discriminated against Poulsen, absent a showing that this discrimination was effected by some official policy or custom, Sedlacek's actions cannot be reasonably attributed to municipal practice or policy (*Carrero,* 890 F.2d 569), especially since Poulsen admits that Graves knew nothing about the harassment prior to her complaint. Item 67 at 15–16.

Poulsen does not appear to contest the City's lack of liability for the events prior to the filing of the EEOC complaint which constitute the alleged *quid pro quo* harassment by Sedlacek. No evidence submitted suggests that the City had a formal or informal policy of encouraging or refusing to prevent sexual harassment prior to Poulsen's complaint. Therefore, the City's motion for summary judgment on its liability under § 1983 for the alleged acts of *quid pro quo* sexual harassment by Sedlacek is granted.

### *2. Hostile Environment Claim*

Secondly, Chief Graves and the City argue that no hostile environment was created or continued as part of an official policy or custom after Poulsen filed her complaint. Officer Poulsen failed to bring to their attention the alleged sexual harassment for four months. Graves claims that once he was advised of the problem, he conducted a thorough investigation, including extensive interviews and follow-up of

additional complaints brought by Poulsen. At the close of the investigation, Graves concluded that there was insufficient evidence to bring disciplinary charges against Lieutenant Sedlacek. Defendants argue that this did not amount to an official policy or custom condoning sexual harassment.

Poulsen counters that she complained to Chief Graves in June of 1989; and while he made an investigation, efforts to deal with the problem were ineffective. She alleges that Graves did little to stop the occurrences, often even failing to acknowledge that her reports had been corroborated. In Poulsen's affidavit, she lists several specific incidents of a harassing, retaliatory nature which occurred after she initially reported the sexual harassment by Sedlacek. While there is a great deal of dispute about the nature and gravity of these incidents, it is undisputed that Poulsen continued to report to Graves that she was being harassed and supplied details and evidence of such harassment. Poulsen's allegations that she continued to suffer at the hands of Lieutenant Sedlacek and others in the Police Department months after filing her charge are supported by the record kept by Chief Graves (Item 77, Ex. B at 715–736), as well as the deposition of Officer Dolan (Item 77, Ex. E), the only other female police officer in the Department at that time.

The Second Circuit Court in *Fiacco* found defendant City responsible for a Constitutional violation as it "was knowingly and deliberately indifferent to the possibility that its police officers were wont to use excessive force and that this indifference was demonstrated by the failure of the City defendants to exercise reasonable care in investigating claims of police brutality in order to supervise the officers in the proper use of force." 783 F.2d at 326. Similarly here, Poulsen has presented enough evidence that Chief Graves was well aware of the incidents of sexual harassment and that his failure to do more than investigate and attempt to segregate the alleged harasser from his victim constituted knowing and deliberate indifference to withstand a motion for summary judgment on this issue.

D. Final Policy Maker

Defendants argue further that in order to hold the City liable, Poulsen must show that a final policymaker acting on behalf of the City adopted or acquiesced in a custom of sexual harassment. They contend that Graves does not fit the narrow definition of "final policymaker" set out in *Pembaur v. Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986):

> [M]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered ... [and] only where a deliberate choice to follow a course of action is made from among various alternatives by the official ... responsible for establishing final policy.

*Id.,* at 481 and 483, 106 S.Ct. at 1299 and 1300.

It is undisputed that Chief Graves had the power to make, and did make, policy for the Police Department, albeit pursuant to a union contract and civil service regulations. There is no indication from the record that either the City Council or the Mayor gave any directions about how to handle the investigation of Poulsen's complaint. Graves had the power to discipline Sedlacek or any other officer whom he found to be acting inappropriately. The fact that he ordered Captain Gilman to see that everyone on Poulsen's shift was talked to about sexual harassment shows that he had the ability to make and change policy regarding these issues. Poulsen asserts that Chief Graves chose to ignore or deal superficially with the complaints of the female officers against supervisory officers and has produced enough documentation to survive summary judgment.

E. Qualified Immunity

Graves urges that he is entitled to qualified immunity from individual suit under § 1983 because he was acting in an official capacity in investigating the charges of sexual harassment against Sedlacek and did not knowingly violate constitutional rights which were clearly established at the time. Government officials performing discretionary functions "are

shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

Graves argues that Poulsen must prove that freedom from a hostile work environment was a clearly established *constitutional* right in order to state a claim under § 1983 against him. A showing that her rights under Title VII were violated is insufficient because a government official only loses his immunity "by violating the clear command of ... a statute or regulation ... [which] provides the basis for the cause of action sued upon." *Davis v. Scherer,* 468 U.S. 183, 194 n. 12, 104 S.Ct. 3012, 3019 n. 12, 82 L.Ed.2d 139 (1984). Graves urges the court to follow *Poe v. Haydon,* in which the Sixth Circuit held that "[t]he mere fact that [plaintiff's] Title VII rights to be free from 'hostile environment' sexual harassment were clearly established at the time of the challenged conduct is not sufficient to defeat appellants' qualified immunity. [Plaintiff's] claims ... must rest on alleged violations of the Constitution." 853 F.2d 418, 428–29 (6th Cir. 1988) (citations omitted).

The Second Circuit has outlined three factors necessary to determine whether a particular right was clearly established at the time a defendant acted:

> (1) whether the right in question was defined with "reasonable specificity;" (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991). While it was well established by 1989 that sexual harassment violates Title VII (*Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)), neither the Supreme Court nor the Second Circuit has yet decided that sexual harassment constitutes a constitutional violation of equal protection. However, in a 1987 case in which plaintiff employees sued defendant employers for sexual harassment in violation of Title VII and § 1983, this court held that "when defendants knowingly allowed an offensive and hostile work environment to exist and failed to protect plaintiffs from harassment and retaliation, they violated plaintiffs' constitutional rights." *Wymer v. New York State Div. for Youth,* 671 F.Supp. 210, 213 (W.D.N.Y.1987). At least one circuit had held the same way by 1989. *Bohen v. City of East Chicago, Ind.,* 799 F.2d 1180 (7th Cir.1986). Regarding the violation of free speech, the Second Circuit found in 1987 that claims of gender-based discrimination by a public employee fell within the First Amendment's protective ambit as a matter of public concern. *Donahue v. Windsor Locks Bd. of Fire Com'rs,* 834 F.2d 54 (2d Cir.1987). Thus, Graves should reasonably have known when Poulsen first filed her complaint alleging sexual harassment that intentionally permitting a hostile environment, including continuing harassment and retaliatory behavior against Poulsen and the other female officer on the force, deprived Poulsen of her right to free speech and equal protection under the law.

Moreover, the narrow reading of *Davis* suggested by the defendant, that an official must be immunized against personal liability after knowingly violating a clearly established federal statute such as Title VII simply because the courts have not yet decided whether the *same activity* represents a *constitutional* violation, appears to belie the intent of *Harlow.* The concern of the *Harlow* court in providing government officials with qualified immunity was to permit them discretionary authority to perform their jobs without constant threat of individual liability resulting from actions taken in compliance with the law of the time. *Davis* held that violation of a state regulation unrelated to the constitutional claim could not void that immunity. However, it does not necessarily follow that the official should be immune from liability when he intentionally deprives an employee of her rights under federal law merely because those same rights may not yet be

*constitutionally* protected. A treatise on § 1983 indicated that this narrow reading might not even be what was intended by the *Davis* Court. It stated:

> *Davis* left open whether an official might lose qualified immunity protection for violating a state law that "bears upon the claim of constitutional right that [the plaintiff] asserts under § 1983." Thus, there may be a distinction between violations of state law that are "irrelevant" to the merits of the plaintiff's constitutional claim, which was the case in *Davis*, and violations of state law that bear on the constitutional issue, which *Davis* suggests may be relevant on the immunity issue.

1 Martin A Schwartz & John E. Kirklin, *Section 1983 Litigation: Claims, Defenses, and Fees* § 9.19 (2d ed. 1991). Both *quid pro quo* and hostile environment sexual harassment had been widely recognized as forms of employment discrimination by 1989. Chief Graves had ample notice that failure to protect Officer Poulsen from a hostile work environment was a violation of her statutory federal rights. That these rights might not be protected by the Constitution as well does not seem to be a good reason to immunize him from suit.

Graves next asserts that even if the court finds that the legal norms were clearly established, Poulsen has failed to set forth evidence sufficient to create a genuine issue of fact as to whether Graves engaged in conduct violative of Poulsen's rights. Graves claims his actions did not violate the constitutional rights of the plaintiff because he never participated or authorized any sexual harassment by Sedlacek or any other officers. Even assuming *arguendo* that Graves was aware of the alleged harassment and permitted a hostile work environment to exist, his failure to take appropriate action is insufficient to constitute personal liability. *Poe*, 853 F.2d 418; Item 67 at 30–32.

It is uncontroverted that Graves, unaware of the sexual relationship between Poulsen and Sedlacek which formed the basis of Poulsen's initial complaint of sexual harassment, began an investigation of the complaint within days of his becoming informed. During the 25-day time period provided by the union contract for such an investigation, Graves interviewed 33 people. These interviews led him to the conclusion that no action was warranted against Lieutenant Sedlacek. Graves argues that even if his response was inadequate to prevent further harassment, the Constitution does not protect Poulsen from less than optimal actions on the part of government officials. All that is required is a good-faith effort on his part to qualify for immunity from individual suit. *Collins*, — U.S. —, 112 S.Ct. 1061.

Poulsen concedes that she was not entitled to a specific outcome of Graves' investigation, but argues that the inconclusiveness of the investigation contributed to a continuation of the hostile work environment in violation of her constitutional rights. In addition to her initial complaint, Poulsen reported to Chief Graves numerous other incidents which she believed evinced further harassment and retaliation. Poulsen argues that Chief Graves' efforts at investigation and eradication were so ineffectual as to constitute deliberate indifference, thereby voiding any qualified immunity he would be entitled to in his position as governmental official. Poulsen asserts that there are issues of facts regarding Graves' activities which preclude a grant of qualified immunity by summary judgment. Item 78 at 11.

The questions of whether a hostile work environment existed and, if so, whether Graves did enough to eradicate it are triable issues of fact. While negligence in investigation would probably not void Graves of his immunity, actual knowledge and acquiescence in the harassment should. *See Andrews v. City of Philadelphia*, 895 F.2d 1469 (3rd Cir.1990); *Woodward*, 977 F.2d 1392. It would be premature to foreclose Poulsen's suit against Graves because the extent of his efforts is in dispute. Poulsen should be given the opportunity to prove to a jury that Chief Graves' ineffectiveness in stopping sexual harassment amounted to "deliberate indifference".

III. *New York State Human Rights Law Claim*

A. Definition of Employer or Agent

Mr. Sedlacek argues that Poulsen has no claim against him under the State Human Rights Law ["HLR"] § 296 because he is not an "employer" or "agent of employer" as contemplated by the statute. The Court of Appeals interpreted the terms as limited to those who have an ownership interest in the employer or power to do more than carry out the personnel decisions made by others. *Patrowich v. Chemical Bank,* 63 N.Y.2d 541, 543, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984). Sedlacek contends that while his rank is higher than Poulsen's, he shares his quasi-supervisory position within the Police Department hierarchy with a substantial portion of the police force and is essentially her co-worker. Item 71 at 18.

Poulsen counters that Sedlacek is individually responsible as the actual perpetrator of the hostile work environment, not as supervisor carrying out the decisions of others. "His ability to act in this fashion originates with his supervisory position." Item 78 at 15.

Two recent district courts in the Second Circuit have declined to grant summary judgment to supervisors sued under the HRL if there is evidence that they actually participated in the harassment. *Wanamaker v. Columbian Rope Co.,* 740 F.Supp. 127, 135–36 (N.D.N.Y.1990); *Bridges v. Eastman Kodak Co.,* 800 F.Supp. 1172, 1181 (S.D.N.Y.1992). The courts distinguished *Patrowich* in both cases, pointing to § 296(6) of the HRL, which states that it shall be an unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." N.Y.Exec. Law § 296(6). "Even if the defendants were not corporate agents ..., plaintiff's allegations support the conclusion that defendants aided or abetted the acts which plaintiff claims violated the HRL." *Wanamaker* at 136.

In the instant case, the evidence Poulsen offered that Sedlacek engaged in both *quid pro quo* and hostile environment sexual harassment also supports her allegations that he was the actual perpetrator, not merely a supervisor who could claim immunity from vicarious liability under State law. Therefore, Sedlacek's motion for summary judgment on the State law claim is denied.

## CONCLUSION

Defendant John Sedlacek's motion for summary judgment dismissing him from plaintiff Kathleen Poulsen's Title VII claim is granted. His motions for dismissal of the § 1983 and New York State Human Rights Law claims are denied.

The joint motion by defendants Lloyd Graves and the City of North Tonawanda for summary judgment of the Title VII claims against them is denied. Lloyd Graves is not entitled to qualified immunity from liability under § 1983. The City is immune from liability under § 1983 for all acts of *quid pro quo* sexual harassment that may have been committed by John Sedlacek, but may be liable for hostile environment sexual harassment in violation of § 1983.

So ordered.