Patricia A. OTT, Plaintiff,

v.

**PERK DEVELOPMENT CORPORATION,** Defendant.

No. 93–CV–195A.

United States District Court, W.D. New York.

March 9, 1994.

Barry J. Donohue, Tonawanda, NY, for plaintiff.

Todd R. Shinaman, Nixon, Hargrave, Devans & Doyle, Rochester, NY, for defendant.

## ORDER

ARCARA, District Judge.

The above-referenced case was referred to Magistrate Judge Carol E. Heckman, pursuant to 28 U.S.C. § 636(b)(1)(B) on April 8, 1993. On February 3, 1994, Magistrate Judge Heckman filed a Report and Recommendation granting defendant's motion for summary judgment.

The Court having carefully reviewed the Report and Recommendation, as well as the pleadings and materials submitted by the parties; and no objections having been timely filed, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), and for the reasons set forth in Magistrate Judge Heckman's Report and Recommendation, defendant's motion for

summary judgment is granted and the case is dismissed in its entirety.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

This case was referred to the undersigned by Hon. Richard J. Arcara to hear & report on dispositive motions pursuant to 28 U.S.C. § 636(b)(1)(B). Defendant has moved for summary judgment dismissing the complaint pursuant to Fed.R.Civ.P. 56. For the following reasons, it is recommended that defendant's motion be granted.

### BACKGROUND

The following facts are not in dispute.[1] Defendant Perk Development Corp. owns and operates several Perkins Family Restaurants ["Perkins"] throughout western and central New York State. Plaintiff was hired by defendant in May, 1988 as assistant manager of the Perkins store in West Seneca, New York. In approximately May, 1989, plaintiff was transferred (upon her request) to the Perkins store in Hamburg, New York where she worked as assistant manager until her resignation and termination on May 8, 1990.

Defendant's management hierarchy at each of its stores generally consists of one general manager, one associate manager, and one or more assistant managers (Item 12, ¶ 5). Plaintiff's immediate supervisor during the entire relevant time period was Joseph Bochiechio, the general manager of the Hamburg Perkins. Bochiechio's supervisor during that same period was Richard Albano, district supervisor for the six Perkins restaurants located in the region referred to by defendant as District I. From May, 1989 to November 5, 1989, the associate manager at the Hamburg Perkins was Kevin Fetes, and the assistant managers were plaintiff and Mark Wilson. On November 5, 1989, Mark Wilson became the associate manager, and on November 12, 1989, William Schultz became an assistant manager.

In January and April, 1990, plaintiff received critical evaluations of her work performance. These evaluations were conducted by Bochiechio at a table in the back of the restaurant. Albano was also present at the April evaluation. According to Bochiechio, and not rebutted by plaintiff, all manager evaluations were done in this way so that the managers on duty would be available to supervise the ongoing shift. During the April, 1990 evaluation, and in a written evaluation dated April 14, 1990 (Item 15, Ex. I), plaintiff was advised that despite negative comments on her performance she showed the ability to be a good manager and was not on the verge of being terminated.

As general manager of the Hamburg Perkins, Bochiechio was also responsible for scheduling the managers' work shifts. During the relevant time period, defendant's practice was to schedule the assistant managers to work more of the late night (11:00 p.m. to 7:00 a.m.) shifts than the associate and general managers. According to the weekly scheduling sheets (Item 12, Ex. A), between May 15, 1989 and May 6, 1990 plaintiff worked a total of 85 late night shifts, while the male assistant manager worked a total of 83 late night shifts, and the general and associate managers, also male, worked a total of 50 late night shifts.[2]

The weekly scheduling sheets also show that during this period, plaintiff was required to "work down" (i.e., work a night shift, and then come back for an afternoon shift, leaving approximately 8 hours between shifts) a

---

1. Defendant has filed a statement of material facts as to which the moving party contends there is no genuine issue to be tried (Item 13), in accordance with Rule 25 of the Local Rules for the Western District of New York. Plaintiff has not complied with her obligation under that Rule. Accordingly, all material facts set forth in defendant's Rule 25 statement are deemed admitted for the purpose of this motion.

2. The general and associate managers' work shifts were apparently structured somewhat differently than the assistant managers' shifts. During that same period, the general and associate manager worked a total of no less than 28 shifts that began at either 5:00 p.m., 6:00 p.m. or 8:00 p.m. and ended at 2:00 a.m. These shifts are not included in the court's calculation of late night shifts worked by the general and associate managers.

total of 15 times, while the male assistant manager was required to do so 25 times. Plaintiff complained to Bochiechio on one occasion when she had been scheduled for seven late night shifts in a row without a day off, and her schedule was changed (Item 13, ¶ 6).

In or about December, 1989, chief supervisor and cook Dan Walsh (who worked under plaintiff's supervision) placed a *Penthouse* magazine in plaintiff's notebook in the restaurant office. Plaintiff verbally reprimanded Walsh and reported the incident to Bochiechio. Both Bochiechio and Albano also verbally reprimanded Walsh, and directed him to apologize to plaintiff. No further disciplinary action was taken.

In or about April, 1990, Bochiechio attached a negative customer evaluation card to the employees' bulletin board located in the back of the restaurant, which indicated that a particular customer had rated plaintiff as "unfriendly" (Item 15, Ex. J).

By letter dated April 24, 1990, plaintiff notified defendant that she was resigning her employment, effective May 8, 1990, because of sexual harassment (Item 15, Ex. A). Prior to her last day of work, plaintiff was interviewed by Sandy Petrone and Paul Hammerl of defendant's personnel department. When asked by Petrone if there was anything she could do to try to remedy plaintiff's concerns, plaintiff indicated that she felt her management authority was completely undermined, and that she preferred to resign (Item 11, Ex. B, p. 56). Plaintiff's vacated managerial position was filled by a woman.

On August 24, 1990, plaintiff filed a charge with the New York State Division of Human Rights ["NYSDHR"] against defendant, alleging employment discrimination because of her sex. Her charge was simultaneously filed with the Equal Employment Opportunity Commission ["EEOC"]. After unsuccessful conciliation efforts, she was issued a right to sue notice by EEOC on January 20, 1993. On March 12, 1993, NYSDHR issued a determination finding no probable cause to believe that defendant had engaged in discriminatory conduct (Item 11, Ex. A).

The complaint in the instant action was filed on March 4, 1993, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the state Human Rights Law, N.Y.Exec.Law § 290 *et seq.*, alleging constructive discharge based on sex discrimination. According to the complaint, the conduct of defendants' employees at the Hamburg store during the period between May 20, 1989 and April 24, 1990 constituted willful discrimination in the compensation, terms, conditions and privileges of her employment because of her sex, forcing her to resign. Plaintiff claims lost wages, pension, insurance and other benefits, as well as severe emotional damage, in the amount of one million dollars. Plaintiff also requests injunctive relief directing defendant to reinstate her, and to enjoin defendant "from discriminating on the basis of sex in firing its employees ..." (Item 1, ¶ 22).

After discovery, defendant moved for summary judgment based on plaintiff's failure to prove sex discrimination.

## DISCUSSION

### I. Summary Judgment.

Summary judgment is appropriate if the pleadings, discovery materials, and affidavits on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reaching this determination, the court must assess whether there are any material factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Coach Leatherware Co., Inc. v. Ann Taylor, Inc.*, 933 F.2d 162, 166–67 (2d Cir.1991). In order to avoid summary judgment, however, the nonmoving party is under the obligation "to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Burke v. Bevona*, 931 F.2d 998, 1001 (2d Cir.1991). "Entry of summary judgment indicates that no reasonable jury could return a verdict for the losing party." *Coach*

*Leatherware, Inc. v. Ann Taylor, Inc., supra,* 933 F.2d at 167.

■ In general, in order to defeat a motion for summary judgment on an employment discrimination claim, the non-moving party must show "that sufficient evidence existed in the record to support a reasonable finding of discrimination. Such evidence may be established directly by demonstrating that a discriminatory reason more likely than not motivated the employer, or indirectly by showing that the employer's explanation is unworthy of credence." *Gibson v. American Broadcasting Companies,* 892 F.2d 1128, 1132 (2d Cir.1989) (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)). As stated by the Second Circuit in the *Gibson* case:

> The possibility that a material issue of fact may exist does not suffice to defeat the motion; upon being confronted with a motion for summary judgment the party opposing it must set forth arguments or facts to indicate that a genuine issue—not merely one that is colorable—of material fact is present.

892 F.2d at 1132 (citing cases).

## II. Sexual Harassment Under Title VII.

■ Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment because of such individual's ... sex...." 42 U.S.C. § 2000e-2(a)(1); *Meritor Savings Bank FSB v. Vinson,* 477 U.S. 57, 63, 106 S.Ct. 2399, 2403–04, 91 L.Ed.2d 49 (1986). Broadly construed, plaintiff has asserted a Title VII violation based on sexual harassment, resulting in her constructive discharge. To prove a sexual harassment claim, the following basic allocation of burdens and order of presentation of proof applies:

> First, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate,

nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dep't of Community Affairs v. Burdine, supra,* 450 U.S. at 252–53, 101 S.Ct. at 1093 (quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)); *see Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 464 (2d Cir.1989); *Porras v. Montefiore Medical Center,* 742 F.Supp. 120, 125–26 (S.D.N.Y. 1990). The ultimate burden of proving that the employer discriminated against the plaintiff because of her sex remains on the plaintiff at all times. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2749–50, 125 L.Ed.2d 407, 419 (1993); *Watson v. Ft. Worth Bank & Trust,* 487 U.S. 977, 997, 108 S.Ct. 2777, 2790, 101 L.Ed.2d 827 (1988); *Silver v. City University of New York,* 767 F.Supp. 494, 498 (S.D.N.Y.), *aff'd,* 947 F.2d 1021 (2d Cir.1991).

### A. Sexual Harassment.

■ Two distinct forms of sexual harassment have been recognized by the courts as violating Title VII. The first is *quid pro quo* sexual harassment, which occurs when an employer alters an employee's job conditions or withholds economic benefits because the employee refuses to submit to sexual demands. *Meritor Savings Bank, supra,* 477 U.S. at 64–65, 106 S.Ct. at 2404–05. The second is "hostile environment" sexual harassment, which occurs when workplace conduct, such as " '[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature ... has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.' " *Id.* at 65, 106 S.Ct. at 2405–05 (quoting 29 C.F.R. § 1604.11(a)).

Plaintiff has not pleaded any facts supporting a *quid pro quo* harassment claim in this case. The essence of her complaint is that

she was forced to resign because of the hostile work environment created by defendant's male managers and employees at the Hamburg Perkins.

■ In order to defeat defendant's summary judgment motion, plaintiff must first make out a *prima facie* case of sexual harassment based on hostile environment by showing that: (1) she belongs to a protected group, (2) she was the subject of unwelcome sexual harassment, (3) the harassment was based on her sex, (4) the sexual harassment affected a term, condition or privilege of employment, and (5) the employer knew or should have known of the harassment and failed to take remedial action. *Trotta v. Mobil Oil Corp.,* 788 F.Supp. 1336, 1348 (S.D.N.Y.1992); *Fair v. Guiding Eyes for the Blind, Inc.,* 742 F.Supp. 151, 154 (S.D.N.Y. 1990).

### 1. Prima Facie Case.

■ It is undisputed that plaintiff is within a protected group for purposes of a claim based on sex discrimination. Defendant's summary judgment motion challenges plaintiff's *prima facie* assertion that the conduct "of a sexual nature" complained of—*i.e.,* the Penthouse magazine incident—constitutes sexual harassment. Defendant further contends that even if that single episode does amount to actionable sexual harassment, such conduct did not affect a term, condition or privilege of plaintiff's employment, and was remedied in any event.

The Supreme Court recently considered the definition of a hostile work environment in *Harris v. Forklift Systems, Inc.,* —— U.S. ——, 114 S.Ct. 367, 126 L.Ed.2d 295 (November 9, 1993). In that case, the plaintiff quit her job as a manager of an equipment rental company after the president of the company repeatedly subjected her and other woman employees to gender-based insults, unwanted sexual innuendos, and other conduct which the plaintiff claimed had created an abusive working environment. After trial, the district court found that although it was "a close case," the employer's conduct did not create an abusive environment. According to the district court, while the employer's comments offended the plaintiff and would have offended "the reasonable woman," they were not ". . . so severe as to be expected to seriously affect [the plaintiff's] psychological well-being. A reasonable woman manager under like circumstances would have been offended by [the employer], but his conduct would not have risen to the level of interfering with that person's work performance." *Id.,* —— U.S. at ——, 114 S.Ct. at 370. The Sixth Circuit affirmed without opinion.

The Supreme Court reversed, finding that the district court erred in focusing on the effect of the employer's conduct on the plaintiff's psychological well-being. The Court reaffirmed the standard for hostile work environment discrimination as set forth in *Meritor Savings Bank v. Vinson, supra.* According to the Court, "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule and insult . . .' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Harris v. Forklift, supra,* —— U.S. at ——, 114 S.Ct. at 370 (quoting *Meritor Savings Bank v. Vinson, supra,* 477 U.S. at 65, 67, 106 S.Ct. at 2404–05, 2405).

> [W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

—— U.S. at ——, 114 S.Ct. at 371.

Based on the totality of the circumstances presented in this case, it is apparent that the *Penthouse* magazine incident is the only conduct complained of that could be construed as patently "of a sexual nature." This incident was certainly "unwelcome in the sense that the employee regarded the conduct as undesirable or offensive." *Henson v. City of*

*Dundee,* 682 F.2d 897, 903 (11th Cir.1982) (quoted in *Trotta v. Mobil Oil Corp., supra,* 788 F.Supp. at 1348).

The record contains no allegations or indications of any further conduct that could be considered to be sexually offensive, such as overbearing and provocative behavior, utterance of obscenities, slurs, insults or innuendos, or otherwise abusive incidents based on her gender. *See e.g., Hall v. Gus Constr. Co., Inc.,* 842 F.2d 1010, 1014–15 (8th Cir.1988). However, the conduct underlying a sexual harassment claim need not be sexual in nature as long as the conduct is directed at the employee because of his or her sex. *Trotta, supra* at 1349 (citing *Carrero v. New York City Housing Authority,* 890 F.2d 569, 578 (2d Cir.1989); also citing *Hall v. Gus Constr., supra,* 842 F.2d at 1014). Here, plaintiff also alleges that she was subjected to a course of "harassment" because she was publicly reprimanded, criticized and disciplined at work while her male counterparts were not, was given less favorable employee evaluations than her male counterparts, and was assigned more late night and "work down" shifts than were assigned to male managers. These allegations amount to a claim of "disparate treatment" sex discrimination, discussed at further length below. If believed, they also lend support to plaintiff's claim that she was sexually harassed because she was treated more harshly than males.

To support her position, plaintiff has submitted statistical evidence (discussed at further length below), copies of her performance evaluations, notices of reprimand, and the negative customer evaluation card that her employer posted on the employee bulletin board. As demonstrated by the discussion that follows, while the court has "grave doubts" that this evidence would "persuade a jury that [the employer]'s conduct amounted to sexual harassment, [it] recognize[s] that issues of fact and credibility pervade this conclusion ..." so as to preclude the entry of summary judgment at the *prima facie* stage. *Fair v. Guiding Eyes, supra,* 742 F.Supp. at 155–56.

Plaintiff has also raised a factual issue regarding the adequacy of the remedial action taken by her employer when confronted with the circumstances of the alleged harassment. The record shows that plaintiff immediately complained of the *Penthouse* magazine incident to Bochiechio, her supervisor, and that Bochiechio reported the incident to Albano. Both Albano and Bochiechio verbally reprimanded the responsible employee, and no further incidents were reported. However, plaintiff testified at her deposition that her complaint was not taken seriously, that Bochiechio actually laughed about the incident (Item 11, ex. B, p. 41) (although he later admitted at his deposition that it constituted sexual harassment (*see* Item 15, Ex. E, p. 45)), and that she believed that Walsh should have received at least a written reprimand. Plaintiff contends that she did not pursue the matter further because she felt that to do so would have been futile under the circumstances of the male-dominated management environment (Item 11, Ex. B, pp. 42–43).

Thus, while the *Penthouse* magazine incident may have been the only patently "sexual" episode complained of, the totality of the circumstances indicate that plaintiff has met her minimal *prima facie* burden of demonstrating that she was subjected to unwelcome harassment prompted because of her gender, and that the employer's conduct was "sufficiently severe or pervasive to alter the conditions of [plaintiff]'s employment and create an abusive working environment." *Harris, supra,* —— U.S. at ——, 114 S.Ct. at 370. The court therefore must consider whether defendant has met its burden of producing sufficient evidence to rebut plaintiff's *prima facie* showing—*i.e.,* "that the adverse employment actions were taken 'for a legitimate, nondiscriminatory reason.'" *St. Mary's Honor Center v. Hicks, supra,* —— U.S. at ——, 113 S.Ct. at 2747, 125 L.Ed.2d at 416 (quoting *Texas Dep't of Community Affairs v. Burdine, supra,* 450 U.S. at 254, 101 S.Ct. at 1094 (1981)).

**2. Defendant's Explanation.**

Defendant contends that any employment actions it took with regard to plaintiff, such as evaluations, criticism, or official reprimands based on her work performance, were entirely reasonable as demonstrated by

plaintiff's work record. For example, in plaintiff's written employee evaluation dated April 14, 1990 (Item 15, Ex. I, pp. 2–3), Bochiechio rated plaintiff's performance as "unsatisfactory" or "marginal" with respect to eight out of fifteen categories designated on the evaluation form as "personal traits," [3] and "competent" with respect to six of those categories. She was rated "above average" with respect to only one category ("appearance & habits"), and was not given an "exceptional" rating for any category.

Bochiechio's written comments clearly indicated his concern for plaintiff's work performance:

> [Y]ou show the ability to be a good manager. However, you have not shown the desire it takes to succeed. You do the bare minimum required of you each day. You're far more concerned with not spending any more time at work than you absolutely have to, rather than accomplishing anything or bettering the unit.... [Y]ou are at a crossroad. If you want a job where you can go in, do what you have to, leave when its [sic] time and forget it, then its [sic] time to do it. You can not continue to approach your job as a Perkins manager that way.

(*Id.*, p. 4).

Moreover, plaintiff received several "Notices of Employee Reprimand" during her one-year employment at the Hamburg Perkins, indicating problems with her management of employees (Item 15, Ex. G, p. 1), attendance at weekly "interstore" meetings (*id.*, p. 2), and the condition of the restaurant at the end of her shift (*id.*, Ex. H). Defendant has also submitted Bochiechio's handwritten notes of a meeting he had with plaintiff in January, 1990, at which several deficiencies in her work performance were discussed (Item 8, Ex. A).

Based on this evidence, defendant has met its burden of setting forth a legitimate, nondiscriminatory explanation for its "negative" evaluations and reprimands sufficient to rebut plaintiff's *prima facie* showing that she was forced to resign because of sexual harassment. Plaintiff now must be given the opportunity to demonstrate that the reason proffered by defendant for evaluating or reprimanding her more harshly than male managers—*i.e.*, her poor work performance—was not the true reason for the treatment she received, but was merely a pretext for discrimination. *St. Mary's Honor Center v. Hicks, supra,* —— U.S. at ——, 113 S.Ct. at 2752, 125 L.Ed.2d at 422; *Texas Dep't of Community Affairs v. Burdine, supra,* 450 U.S. at 253, 101 S.Ct. at 1093–94.

### 3. Intentional Discrimination.

Plaintiff's burden of showing that the proffered reason was not the true reason for defendant's employment actions "merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Burdine, supra,* 450 U.S. at 256, 106 S.Ct. at 1095. This burden may be met "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* Thus, in order to defeat defendant's motion for summary judgment on plaintiff's sexual harassment claim, plaintiff must come forward with evidence that—at a minimum—creates a genuine issue of fact that defendant's explanation is somehow not credible, or that defendant "was otherwise motivated by a discriminatory purpose." *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1115 (2d Cir.1988). After careful review of the record before the court, it is clear that plaintiff has failed to meet this burden.

The only evidence submitted by plaintiff, after ample opportunity for discovery, consists of copies of defendant's management reports (Item 15, Exs. B, C), which she contends provide statistical evidence of the disparity in male managers to female managers from which it may be inferred that a discriminatory reason likely motivated defendant's conduct toward her. According to plaintiff, based on these statistics, there was

---

**3.** These categories are: knowledge, quantity, accuracy, judgment, innovation, appearance & habits, management skills, people development, cooperation, initiative, reliability, perseverance, stability, alertness, and problem solving/decision making.

only one woman general manager out of 14 general managers in the Buffalo region during the relevant time period (approximately .07%), and only seven woman general managers out of 41 general managers throughout defendant's four regions (approximately 17%).

However, this interpretation is perceptibly skewed. Those same statistics show that, for the same regions and during the same time periods, approximately 36% of the assistant managers, and approximately 40% of the associate managers, were women. Overall, approximately 14 of 55 Buffalo area managers (approximately 25.5%), and approximately 44 of 139 managers throughout the four regions (approximately 31.5%), were women. These percentages more closely reflect defendant's policy of hiring woman managers than do the figures put forward by plaintiff reflecting only the ratio of female to male *general* managers. Plaintiff does not claim, nor has she submitted any evidence to suggest, that she was denied the opportunity for promotion to an associate or general manager position, and plaintiff's complaint does not assert any claims on behalf of a particular class. The ratio of female to male general managers is therefore of questionable relevance to the sexual harassment claim pleaded here.

Plaintiff also argues that despite the fact that she made up 25% of the management work force at the Hamburg Perkins (*i.e.*, she was one of four managers, and the only woman manager), she was assigned 41% of the late night shifts assigned to management personnel during her tenure. As indicated by the discussion above in the factual section, this reading of the shift reports is also skewed. Those statistics show that, during the period between May 1989 and May 1990, plaintiff worked 85 late night shifts while the similarly-situated male assistant manager worked 83 late night shifts, and that plaintiff "worked down" ten fewer times than her male counterparts. Additionally, these same statistics show that during the same period, plaintiff worked the most desirable 7:00 a.m. to 4:00 p.m. shift 49 times, compared to 48 times for the male assistant manager.

The management and work shift statistics as a whole are therefore insufficient to create a genuine issue of fact as to the credibility of, or discriminatory motive for, defendant's stated reason for its evaluations, reprimands or criticisms of plaintiff's work performance. Plaintiff has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof—namely, that defendant intentionally engaged in a course of sexually harassing conduct toward plaintiff. Accordingly, summary judgment should be granted in favor of defendant on plaintiff's sexual harassment claim.

## B. Disparate Treatment.

Plaintiff also contends that she was discriminated against based on her sex because she was treated differently than the male managers at the Hamburg Perkins in terms of scheduling for undesirable late night shifts, "working down," performance evaluations, posting of customer evaluation cards, and on-the-job criticism and discipline.

To establish a *prima facie* case of disparate or discriminatory treatment under Title VII, plaintiff must "show that she was treated less favorably than comparable male employees in circumstances from which a gender-based motive could be inferred." *Schwabenbauer v. Board of Education*, 667 F.2d 305, 309 (2d Cir.1981); *Montana v. First Federal Savings & Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2d Cir.1989). For a plaintiff to prevail on a disparate treatment claim, "[p]roof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335–36 n. 15, 97 S.Ct. 1843, 1854–55 n. 15, 52 L.Ed.2d 396 (1977); *Zahorik v. Cornell University*, 729 F.2d 85, 91–92 (2d Cir.1984).

As discussed above in relation to her sexual harassment claim, plaintiff has failed to produce any evidence of discriminatory motive on the part of defendant. The statistical evidence in the record does not demonstrate a "gross disparity" of treatment among male and female managerial employees, especially among the relevant category

of assistant managers, sufficient to provide a basis for an inference of discriminatory motive. *New York City Transit Authority v. Beazer*, 440 U.S. 568, 584, 99 S.Ct. 1355, 1365, 59 L.Ed.2d 587 (1979); *Martin v. Citibank, N.A.*, 762 F.2d 212, 218 (2d Cir.1985); *Silver v. City University, supra*, 767 F.Supp. at 498–99.

The weekly shift scheduling reports also fail to show that plaintiff was treated differently from similarly situated male employees under circumstances indicating discriminatory intent. As discussed above, plaintiff has failed to show that she was assigned a disproportionate number of late night or "work down" shifts because she is a woman.

Plaintiff has also failed to submit any evidence tending to show that the posting of the negative customer evaluation card was done to undermine her managerial authority because she is a woman, or for any reason other than that it was common practice to do so.

Plaintiff has failed to produce any evidence, other than conclusory allegations, to show that she was evaluated, reprimanded, or disciplined differently or more harshly than her male counterparts under circumstances from which it could be inferred that any such treatment was based on her gender. She has produced no evidence to rebut defendant's affirmations that it was common practice to conduct managers' evaluations at a table in the back of the restaurant so that managerial staff could supervise the ongoing shift, or to show that any of the male assistant managers were evaluated or reprimanded in any other manner.

Finally, plaintiff's vacated managerial position was filled by a woman.

Accordingly, Plaintiff has failed to meet her burden on this summary judgment motion of producing sufficient evidence to support a reasonable finding of *prima facie* sex discrimination based on disparate treatment. Summary judgment should therefore be entered in favor of defendant on plaintiff's disparate treatment claim.

## C. Constructive Discharge.

To succeed on her constructive discharge claim under Title VII, plaintiff must produce evidence sufficient to satisfy the trier of fact that the employer deliberately created working conditions that were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign. *Martin v. Citibank, supra*, 762 F.2d at 221; *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir.1983).

Plaintiff has likewise failed to sustain this burden. The record shows that she was not assigned a disproportionate number of undesirable late night or "work down" shifts, and she has failed to produce any evidence to show that her evaluations were conducted or criticisms of her work were administered any differently than for the similarly situated male managers. The *Penthouse* magazine incident was resolved in a manner indicating that a reasonable person would have been satisfied that no such incidents would be likely to occur in the future. The record also shows that despite her problems, Bochiechio and Albano considered her to have good management skills, and advised her that she could continue in her position if she made some adjustments in her approach to the job. Finally, during her exit interview, the personnel director indicated a willingness to work with plaintiff in order to attempt to resolve whatever problems she had been having with her supervisors and fellow employees.

These circumstances demonstrate that plaintiff has failed as a matter of law to establish a constructive discharge claim. The record shows that plaintiff was presented with reasonable opportunities to correct perceived difficulties with or deficiencies in her work performance, yet voluntarily chose to resign instead. The evidence produced does not suffice to sustain an inference that a reasonable person, faced with the same situation, would have been compelled to resign.

## D. State Law Claims.

Plaintiff has also pleaded violations of New York State Human Rights Law, N.Y. Executive Law §§ 290 *et seq.*, based on the

same conduct alleged to have violated Title VII. Defendant moves to dismiss the complaint insofar as it alleges pendent state law claims on the ground that such claims are barred by plaintiff's election of administrative remedies.

N.Y. Executive Law § 297(9) provides, in relevant part:

Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages and such other remedies as may be appropriate, unless such person had filed a complaint hereunder or with any local commission on human rights, ... provided that, where the division has dismissed such complaint on the grounds of administrative convenience, such person shall maintain all rights to bring suit as if no complaint had been filed. A complaint filed by the equal employment opportunity commission to comply with the requirements of [Title VII] ... shall not constitute the filing of a complaint within the meaning of this subdivision.

N.Y. Executive Law § 297(9) (McKinney 1993) (as amended effective June 15, 1991). Courts in the Second Circuit have held that, where a claimant voluntarily files a discrimination claim with the NYSDHR, she has elected to proceed with her state law claim in the administrative forum and forfeited her right to assert that claim in federal court, unless the administrative complaint is dismissed by the NYSDHR for administrative convenience. *Stout v. International Business Machines Corp.*, 798 F.Supp. 998, 1008–09 (S.D.N.Y.1992); *Keeley v. Citibank, N.A.*, 711 F.Supp. 157, 161 (S.D.N.Y.1989). This bar is not applied to cases in which the complainant originally filed her administrative charge with the EEOC and the state claims came before the NYSDHR only after the EEOC referred the charges to the state agency, as it is required to do under Title VII (and as expressly contemplated by the 1991 amendment to § 297(9)). *See, e.g., Long v. AT & T Information Systems, Inc.*, 733 F.Supp. 188, 198 (S.D.N.Y.1990).

In the instant case, the record indicates that plaintiff originally filed administrative claims with *both* the EEOC and the NYSDHR on August 24, 1990 (Item 1, ¶¶ 7, 8; Item 11, Ex. A). According to the complaint, EEOC issued a "right to sue" on January 20, 1993, after unsuccessful conciliation (Item 1, ¶¶ 10, 11). Plaintiff filed this action on March 4, 1993. The NYSDHR then issued a "Determination and Order After Investigation" on March 12, 1993, finding no probable cause for the charge, dismissing the complaint, and advising plaintiff of her right to appeal to the New York State Supreme Court, or to request review by the EEOC (Item 11, Ex. A).

In the absence of any evidence to the contrary, the court finds that plaintiff's state law claims are barred. The record clearly suggests that plaintiff voluntarily elected to file an administrative charge with the NYSDHR, and that her complaint was not dismissed for administrative convenience but only after a finding of no probable cause. "Under these circumstances, plaintiff is unable under New York law to seek a state court remedy ...," *Stout v. International Business Machines, supra,* 798 F.Supp. at 1008, and this court cannot exercise pendent jurisdiction over the state law claims. *Promisel v. First American Artificial Flowers,* 943 F.2d 251, 257 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992). Accordingly, it is recommended that defendant's motion to dismiss plaintiff's state law claims be granted.

## CONCLUSION

For the reasons set forth above, it is recommended that defendant's motion for summary judgment be granted dismissing plaintiff's case in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED,** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 30(a)(3).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.,* 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 30(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 30(a)(3), or with the similar provisions of Rule 30(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.*

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the plaintiff and the defendant.

**So Ordered.**